MARY ALLENDER, ET AL., vs. THE VESTRY OF TRINITY CHURCH.—*June 1845.*

In 1807, G conveyed to S *and others*, two lots, on which a church had then lately been erected, in trust; "that the grantees upon being reimbursed all sums which have been, or may hereafter be paid and applied in and about the building of such church, release to such person or persons as shall or may be legally authorised to receive the same, all their estate in, &c. in trust for the said church. *A*, the surviving grantee, laid out a large sum upon the building, and devised the debt to the appellants, who, in 1837, filed a bill to sell the lots for repayment of their claim, against the vestrymen of the church: no person had been authorised to receive a release from the grantees. The vestrymen answered the bill, assented to a sale, but disclaimed knowledge of the amount of *A*'s expenditures. HELD:

1. The act of limitations was not a bar.

2. The right of the complainants rested upon the equitable implication of a lien.

3. The non-appointment of persons to receive a release, could only be accounted for by imparting to the vestry a knowledge of the fact, that the building of the church had not been paid for.

4. The only proceeding by which a recovery could be had, was *in rem.*

5. The assent of the appellees was a waiver of the objection, that the claim was a stale one, and abandoned by lapse of time.

Where one and the same person is both *cestui que trust* and trustee, and the right to recover rests on a mere equitable implication of a lien, not recognised at law, and there is no adverse or uninterrupted possession relied on in bar, the act of limitations constitutes no defence.

To entitle a party to the benefit of the act of limitations, the claim must be such that, if exempted from that plea, it could be recovered by an action in a court of law.

The act of limitations to be available, must either be relied on by plea or answer.

By the act of 1798, ch.    , sec. 29, "No vestry can sell a lien, or transfer any of their estates or property belonging to the church, without the consent, at least, of five of their body,"—rector, church wardens, and bishop of the *P. E. Church.* The assent of vestrymen, to a decree for the sale of church property, in this case must be regarded as implied admission, that the debt claimed was due, as they have no power to make a voluntary sale of the property.

A notice entitled in another cause to produce books in evidence, merely filed in this, without proof of service, raises no inference against the party to whom the notice is addressed.

Primary proof in equity, stands in the place of full proof, until full proof is demanded. Such a demand dispenses with and invalidates primary proof.

It is a settled rule of evidence, that if a debtor defendant, seeking to discharge himself from a claim preferred against him, relies on the entries on the

credit side of the account, rendered or exhibited by his creditor, he there-by admits in evidence against him, the entries on the debit side of the account; and such debits not being discredited nor disproved by testimony in the cause, establish the claim according to the account.

In a controversy upon an account for work and labor, materials furnished, and money paid, after a lapse of twenty-four years, suit commenced, general proof of the nature and extent of the demand being in evidence, and free from suspicion, much less detailed proof should be exacted from the claimant; than if, immediately after its origin, a controversy in rela-tion to it had arisen.

Signatures to receipts for money paid, being in the possession of the party and his representatives claiming under him, for more than thirty years, need not be proved. They are presumed to be genuine, when they relate to transactions, which are established as having occurred in conformity to the receipts, by general and collateral proof.

APPEAL from the equity side of *Baltimore* county court.

The bill in this cause was filed on the 20th September 1837, by the appellants and others, who claimed as creditors for money paid, laid out and expended, in and about the erecting of a church in the city of *Baltimore*.

It appeared that on the 20th May 1807, *William Goodwin* conveyed to *William Slater* and others, two lots of ground in *Baltimore*, on which said lots the *Trinity* church, &c. hath been lately erected, in trust; that the grantees, (of whom the appellants father and testator was one,) "upon being reimbursed and paid, all and every the sums of money which hath or have already been or may hereafter be, by them or either of them paid, &c., and applied, in and about the erecting and building of the aforesaid church," shall and will release, convey and assure unto such person or persons as shall and may be legally autho-rized to receive the same, by a good and sufficient deed, all the estate and interest of them the said *William Slater*, &c., of and in the said two lots in trust for the use of the said *Trinity* church, &c.

The bill claimed, among others, that *Joseph Allender*, de-ceased, had laid out to the 1st January 1826, the sum of $5661,18; and that such debt was specifically devised by him to the complainants. The bill prayed process against the heirs at law of *William Goodwin*, and the vestrymen of the church, that the property may be sold for payment of debts secured by the deed, &c.

The vestrymen, the appellees, answered the bill, admitted the deed, &c.; and that they have heard and believe, that *Joseph Allender*, &c., paid, laid out and expended, in the erection of the said church, sums of money, but to what amount, and whether the same has ever been repaid, these defendants have had no opportunity of knowing, and therefore insist, that the complainants be put to strict proof of their claims, &c.

The heirs at law of the grantor admitted the facts of the bill.

On the 20th September 1837, a decree was passed for a sale, by assent of parties, and a trustee appointed to make it, who reported a sale for the sum of $3600. A variety of proceedings were then had in relation to the amount of the claims and distribution of the fund, which are sufficiently stated in the opinion of this court.

The county court, (MAGRUDER, A. J.,) rejected the claims of *Joseph Allender's* devisees, and ordered the proceeds of sales to be paid to the defendants, the vestrymen of the church.

The complainants appealed to this court.

The cause was argued before DORSEY, SPENCE and MARTIN, J.

By GLENN and REVERDY JOHNSON for the appellants, and By ADDISON and DULANY for the appellees.

DORSEY, J., delivered the opinion of this court.

The claim sought to be recovered by the appellants, by the institution of the proceedings before us, has been resisted on various grounds; but the defences mainly relied on in this court, are the three following:

1st. The statute of limitations.

2dly. The staleness of the claim, from the length of time that the appellants have slept upon their rights; and

3dly. The absence of the necessary proofs to establish the same.

To determine on the sufficiency of the plea of limitations, as a bar to such a claim, it is necessary first, to ascertain the nature

of the claim, and before what tribunal its recovery can be pursued.

This is not a case, strictly speaking, of either express or implied trust, where one of the parties stands in the character of a trustee, and the other bears to him the relation of *cestui que trust;* but where one and the same person, was both *cestui que trust* and trustee. The right of the appellants to the relief they have sought, rests on a mere equitable implication of a lien, not recognised at law, and of which a court of law could in no way take cognizance: to such a court, in no form of action, could the appellants successfully apply for any adequate relief. *Doctor Allender*, as far as concerns the claim now asserted by his representatives, was both trustee and *cestui que trust;* and as the surviving joint tenant of the grantees of *William Goodwin*, held the property in question, until being reimbursed, all expenditures made by him in the building of the church, he should convey the same to the persons duly authorised to receive the deed of conveyance, as provided for in the deed from *William Goodwin*. That such persons were ever appointed, has not been pretended; and their non-appointment, although twenty-five years and more had elapsed since the completion of the church, can only be satisfactorily accounted for by imputing to the vestry a knowledge of the fact, that a conveyance could not lawfully have been called for, by reason of the only ground that could be assigned for its refusal or postponement, to wit, unrepaid advances for the building of the church. It has not been relied on as a defence in this cause, (nor if it had, could it, upon the proofs and proceedings before us, have been successfully maintained,) that the appellees have had the adverse and uninterrupted possession for more than twenty years, of the lots of ground and premises, the sale of which was sought by the bill of complaint of the appellants. To give to the appellees the benefit of the plea of limitations, the claim must be such, that if exempted from that plea, it could be recovered by an action in a court of law. To cite authorities for this, (even if before it could be deemed requisite,) since the case of *Kane vs. Bloodgood, 7 Johns. C. R.*, 90, cannot be necessary. Here, the appellants claim is a debt due by nobody. Neither

22    v.3

at law nor in equity can a judgment or decree be obtained, personally binding any body for its payment. The only proceeding by which a recovery can be had, is in *rem; in personam,* there is no remedy. The statute of limitations, then, could interpose no bar to the appellants right to recover, assuming it to have been formally pleaded in the answer of the appellees. But conceding that the statute of limitations could be applied to such a claim as that now before us, the concession is of no avail to the appellees, as the defence has neither been pleaded nor relied on in their answer. *Chambers vs. Chalmers, et al.,* 4 *Gill & Johns.,* 420.

The second defence on which the appellees have relied is, that the staleness of the appellants claim, by reason of the great length of time during which they have forborne to prosecute it, has caused a court of equity to shut its doors against them, by refusing to take further cognizance of the subject matter of their complaints. Without stopping to enquire, whether the peculiar nature and circumstances of this case do not sufficiently account for the delay in its prosecution? whether that delay was not, in some measure, the result of equal negligence and delay on the part of the appellees? and whether that negligence and delay is not to be accounted for solely on a ground, which at once opens the doors of a court of equity to the appeals to it, by the appellants, for relief?—we proceed to state the reasons why this defence cannot avail the appellees. By the assent of the appellees to the decree, which has been passed in this cause, they have, by necessary implication, waived the defence of which they now seek to take advantage; they have assented to the county court taking cognizance of the case, and enquiring into the intrinsic merits and justice of the claim of the appellants; they have acknowledged that there is a sum of money due to the appellants, for the payment of which, the county court were authorised, and ought to decree a sale of the property in question. Upon no other grounds could they have given their assent to the passage of the decree, which was given by the county court. By the twenty-ninth section of an act, entitled, "an act for the establishment of vestries for each parish in this State," passed at November ses-

sion 1798, it is enacted "that no vestry shall sell a lien, or transfer any of their estates or property, belonging to their church or churches, without the consent of five, at least, of their body, (of which number the rector shall always be one,) together with the consent of both the church-wardens; and in case there be no rector in the parish, then it shall be necessary to obtain the consent of the bishop of the *Protestant Episcopal Church* of this State, for the time being, previous to any sale, alienation or transfer of any of the estates or property aforesaid." To the decree passed by the county court, no assent of the rector, church-wardens, or bishop, was given: neither of them were parties to these proceedings. If the vestry had no power to make a voluntary sale of the property of the church, they had no power to confer upon the county court an authority to decree such sale. If there was nothing due to the appellants under the deed from *William Goodwin*, then the vestry were wholly unauthorised to give any assent to the decree for a sale, and the assent of itself, would give to the county court no power to make such a decree. Without imputing to the vestry a gross violation of their duty, and an imposition practised upon the county court, we cannot do otherwise, than regard their assent to the decree passed in this case as an implied admission by them, that there was a debt due to the appellants, under the deed from *William Goodwin*, for the payment of which, they were entitled to a sale of the church property.

The third ground upon which the claim of the appellants is resisted, is, that the proofs in the cause do not shew any thing to be due to them on account of expenditures made by *Doctor Allender*, in the building of *Trinity* church. And in support of this position they allege, that every presumption ought to be raised against their claim, because they did not exhibit, and have withheld the books of account of *Doctor Allender*, kept in relation to his receipts and expenditures for the church, although notified to produce them. It is true, that near the end of the record the following paper has been inserted, viz:

"*Price and others vs. Allender and others.* Baltimore county court, equity side. *James Biays, Walter T. Allender*, adm'rs of *Dr. Joseph Allender.* Notice is hereby given you to produce

the books of the *Trinity* church, which *Dr. Joseph Allender* had, as treasurer of *Trinity* church, to be used as evidence before the auditor and said court, in the taking of the account and hearing of the above case, and this is signed by the solicitor of the appellees."

But this notice is not entitled as of the case then before the court, nor does it appear when it was filed; or that the court ever acted or passed any order upon it; or, indeed, that the appellants ever had any notice of its existence.   It raises, then, no inference against the validity or justice of the appellants claim, that they had not produced in court, books which they had no motive primarily to adduce, not being admissible evidence of their claim; which books, by no direct proof, are shewn ever to have been in their possession; and which, by no order of the court, or even notice served upon them from the opposite party, were they required to produce.

It has also been urged, that the county court were right in rejecting the appellants claim, because it was not authenticated in the mode prescribed by our testamentary system, for claims exhibited against the estates of deceased persons.   This objection detracts nothing from the appellants right to recover.   The appellees, by their answer, called upon the appellants for full proof of their claim; and this requisition *per se*, would have dispensed with the ordinary, pecuniary proofs of their claim, prescribed by our testamentary system, had it been made against the estate of a deceased person.   What object could a claimant have in exhibiting primary proofs of his claim, when they would be wholly inadmissible evidence to sustain it, where full proof is required?   Primary proofs stand in the place of full proof, until full proof is demanded.   From that moment they cease to be any evidence in the case, and there no longer exists any necessity for their production.

We come, now, to the last defence of the appellees, the only open question in the cause, have the appellants offered sufficient evidence to substantiate a claim equal in amount to the fund to be distributed.   The appellees have insisted, that conceding the proof in the cause, to shew that the appellants had expended the sum of money stated in their bill, over and above the

amount of their receipts, as shewn by the testimony; yet that account X is a pleading in the cause, and is evidence for the appellees of all the credits in the account, but is no evidence for the appellants as to the debit side of that account, and thus the claim of the appellants is more than overpaid, by their own shewing. In support of such a doctrine, no authority has been referred to, and we deem it unnecessary to adduce authorities against it. If any principle, both at law and in equity, is conclusively settled, it is, that if a debtor defendant, seeking to discharge himself from a claim preferred against him, relies on the entries on the credit side of the account rendered or exhibited by his creditor, he thereby admits in evidence against him, the entries on the debit side of the account. If then the appellees put their defence on the credits allowed them in account X, the debits of that account not being discredited or disproved by the testimony in the cause, establish the claim for which these proceedings were instituted.

But, say the appellees, the account X is no evidence in this case, (which is undoubtedly true,) and the vouchers produced by the appellants for the alleged payments by *Doctor Allender*, with the testimony taken in relation to them, are wholly insufficient for the purpose for which they are offered. And they further contend, that by reason of the great length of time which has elapsed since these transactions took place, that more full and minute testimony is required in relation to those vouchers, than if the present enquiry, in relation to them, had taken place immediately after they were given. That independently of the vouchers, it is not only necessary to prove the payment of the sums of money mentioned in those vouchers, but to prove that the materials furnished, and for which payment was made, were of good quality, were necessarily used in the building of the church, and were appropriate for the purpose for which they were used. That the services were actually and necessarily rendered, and were of the value of the payments made for them. That the work, with its value, done by each mechanic, and the necessity for such work, must be shewn, before there can be any allowance for the payments made to them. And that the handwriting of each subscriber

to those receipts, must be proved by competent testimony, before they can be received as evidence of the payments they purport to attest.   That after a lapse of more than twenty-five years, this great particularity and fulness of proof is required of the representatives of *Doctor Allender;* and that stronger proof is demanded to sustain their claim, than would have been requisite had it been the subject of judicial scrutiny immediately after its origin, are positions which we think cannot be maintained upon any sound principles of reason, law or justice. On the contrary, in our opinion, much less detailed and conclusive proof should be exacted in support of the claim before us, than if, immediately after it originated, the present controversy had arisen.

Looking at the present case, as it is presented by the record, we do not see any material difference in respect to the proofs necessary to sustain their claim, if the appellants, instead of being complainants, as they now are, had been brought into court as defendants, to a bill filed against them by the appellees, calling for a deed of conveyance upon the terms specified in the deed from *William Goodwin,* and in bar of the relief prayed, they had set up the existence of the claim they are now seeking to recover.   In support of such a defence, after such a lapse of time, could it be contended, that to sustain the vouchers then exhibited in that suit, as they are now in this, the fullness and particularity of proof suggested by the appellees would have been required by the court?

It must be borne in mind, that there is nothing to be found in the record, which taints with suspicion the vouchers adduced by the appellants.   No proof has been given by the appellees which discredits or proves the injustice of any one of them. After a careful examination of them, we think, that far more of them are sustained by sufficient evidence, than are necessary to establish a claim beyond that now made by the appellants, after making all deductions for the credits, satisfactorily established by the appellees.   It is in proof, by the testimony of the appellees, that the church "was carefully constructed, and with great solidity," and that the erection of such a building now, would cost $30,000; and there is no evidence before us to shew,

that when built, its erection could have been effected for a less sum of money. It is also proved, that *Joseph Jeffers* was the master carpenter, and *Charles Stansbury* the bricklayer for the building of the church. Their signatures are proved to all the vouchers to which their names are attached. The signature of *James Jeffers*, and his authority to receive, has been proved as to all the receipts given by him on account of his father. There has not been an insinuation in the argument, much less is there to be found in the record any proof, that the sums of money appearing by the vouchers to have been paid to *Joseph Jeffers* and *Charles Stansbury*, were greater in amount than they ought to have received for their services as master carpenter and bricklayer, for the erection of such a building. On the contrary, it appears, that after all the previous payments made to him, *Joseph Jeffers'* claim for a further sum for his services in building the church were submitted to arbitration, and the sum of $432 was awarded to him, which was paid by *Doctor Allender*. It is in proof, also, that *Joseph Jeffers* and *Charles Stansbury* are both dead. Under all the circumstances of this case, then, we are of opinion, that all the receipts or vouchers signed by *Charles Stansbury*, and those signed by *Joseph Jeffers* and *James Jeffers*, are sufficiently established by proof, to entitle the representatives of *Doctor Allender* to use them, in support of the claim they are now pursuing. And we are further of opinion, that all the vouchers of the appellants avouched by the signature of *Joseph Jeffers*, and those by the signature of *Charles Stansbury*, purporting to have thereon the receipts of those in whose favor they were avouched, are sufficiently established for the purpose above mentioned. The appellants are under no obligation to prove the signatures to those receipts. Having been in their possession, and that of *Doctor Allender*, whom they represent, for more than thirty years, as we may fairly presume, these receipts, under the circumstances and for the purposes for which they are brought before us, prove themselves. To hold otherwise, and carry out the views of the appellees, would be of ruinous consequence, and do flagrant injustice to trustees and agents, and would deter every prudent man from enlisting in such service. The vouchers accredited

by this court, after a deduction of all credits to which they are properly subject, exceed in amount the fund to be distributed.

This court are prepared to sign a decree, reversing the order of the county court appealed from, with costs to appellants in this court; the costs in the county court to be paid out of the fund in court; and ordering the fund in controversy to be paid over to the appellants, the executors of *Doctor Joseph Allender*.

DECREE REVERSED WITH COSTS.