# Mary Kent & Others, *vs.* Ann Janetta Waters.

By a deed of trust a grantor conveyed real and personal estate to a trustee, in trust to sell the same, and, out of the proceeds, to pay expenses and commissions; then to pay $500, advanced by the trustee to the grantor, *"and any other advances or payments he may make for me;"* then to pay all the just debts the grantor then owed, *"as, and when, he may be in funds to do so;"* then *to invest* the balance *"in his name,"* for the grantor's use, and out of the net income of such investment, or balance of funds in his hands, "to pay my *mother* $350 a year, during her life, if it yield so much, and if not, then all it does yield, net; and if it yields more, the net balance of income, over $350 a year, to be held in trust for me; and, after the death of my mother, the whole property, and its income, to be held in trust for me." Held:

1st. That by this deed the grantor, in effect, reserved the right to use the whole trust funds, by requiring advances or payments to be made on his account, and he could exercise this power of appropriation by selling the property and receiving the purchase money, or directing its application for his own use, at any time before investments were made.

2nd. That entries in the books of the trustee, attested by the signature of the grantor, showing the application of the proceeds of sale of the personalty, and that the grantor had sold the real estate and settled with the trustee, are admissible, in evidence, for the heirs of the surety on the trustee's bond, in the case of a claim by the *mother* against the estate of such surety.

In the case of the sale of an estate to pay debts, an order was passed, setting down the petition of a certain claimant for hearing, on a day limited, provided a copy of the petition and order was served on the other side; and after this period had elapsed, and no answer had been filed, an order was passed referring the claim to the auditor, to be stated, such statement to be subject to the further order of the court. Held:

That these proceedings could not be regarded as a taking of the petition of the claimant *pro confesso*, and preventing an answer denying the allegations of the petition, and requiring proof to establish the claim.

In case of claims against the estate of a *surety*, proof of the insolvency of the *principal*, taken by other parties *before* the particular claimant became a party to the proceedings, is not binding upon the heirs in respect to the claim of such claimant.

Where full proof of a claim against an estate is called for, in a proceeding in equity, such requisition, *per se*, dispenses with the ordinary *precautionary* proof of the claim prescribed by our testamentary system: primary proof stands in the place of full proof, until the latter is demanded, but, from that moment, the former ceases to be any evidence in the case, and the necessity for its production no longer exists.

Kent, *et al.*, *vs.* Waters.

A re-argument of a case decided by this court, will not be granted, unless a member of the court who concurred in the judgment, desires it; and, when that is the case, it will be ordered, without waiting for the application of counsel,

APPEAL from the Equity side of the Circuit Court for Anne Arundel County.

The widow and adult heirs of James Kent, who died intestate, filed their bill in February 1853, against the administrator and infant heirs, for a sale of his real estate to pay debts, in order to save the personalty. After answers, and other proceedings, which need not be stated, the court, on the 4th of April 1853, passed a decree for the sale of said real estate, and requiring the trustees to give notice to creditors "to file their claims with the vouchers thereof," with the clerk, "within three months from the day of sale." Sales were made and ratified, and a large number of claims being filed under the notice, the auditor, on the 15th of June 1854, made his report, with a statement of claims so filed, and stated several accounts distributing a portion of the proceeds. Some of the claims being objected to, the claimants filed petitions to take proof to sustain them, and on the 24th of July 1854, an order passed, authorising "the petitioners and other creditors and the parties," to take depositions before a justice of the peace, on giving the usual notice, and directing the testimony to be filed in court before the 1st of October ensuing. Under this order proof was taken, and it being necessary to show the condition of the estate of J. J. Speed, deceased, for whom Kent had become endorser or surety on some of the claims, it was proved, on the part of these claimants, that his estate was insolvent and would not pay more than thirty cents in the dollar. On the 7th of December 1854, the auditor filed another report and account, which were ratified on the same day, but in this report stated that he would thereafter report what claims are now proved after a further examination thereof.

Other creditors continued to file their claims, and on the 28th of March 1856, the appellee, Mrs. Waters, filed her peti-

tion, setting forth her claim, founded upon a bond executed by Kent as surety for Speed, dated the 13th of April 1849, in the penalty of $20,000, conditioned for the faithful performance by Speed, of his duties as trustee under a deed of trust to him from John W. Waters, dated the 13th of February 1849, and compliance by him with the provisions of the Act of 1845, ch. 166. By this deed, duly recorded in Anne Arundel county, where the property was situated, the grantor, John W. Waters, conveyed to Speed certain real and personal estate in trust, "that as soon as may be, or as soon as in his judgment it may be expedient, the trustee shall dispose of and sell the said land and farm and personal property at public or private sale, as he may see proper, and after such advertisement, and upon such terms of sale of cash or credit, and in such modes as he may see proper and deem best for my interest; and that he shall apply the proceeds of said sales, *first*, to pay and meet the expenses of the trust with a commission of six per cent. to the said Speed, as trustee, on the whole amount of said property, exclusive of his outlays, which are to be reimbursed; *then*, in trust to pay the said Speed the sum of $500 which he has advanced me with interest, *and any other advances or payments he may make for me; then* in trust to pay out of the proceeds of sale all my just debts *that I now owe, as, and when, he may be in funds to do so; then* in trust to invest the balance of said proceeds of sale in mortgages or other securities as he may see proper, in the city of Baltimore or elsewhere, *in his name,* to my use, and to re-invest the same at his discretion; *then* out of the net income of said investment or balance of funds in his hands, in trust *to pay to my mother, Ann Janetta Waters, the sum of $350 a year during her lifetime, if it shall yield so much, and if not, then all it does yield net, and if it yields more, the net balance of income over $350 a year to be held in trust for me, and after the death of my mother the whole property and its increase to be held in trust for me.*" By a deed, also duly recorded, dated the 18th of July 1850, the said Speed and Waters sold and conveyed the

land mentioned in the preceding deed to Mrs. Janetta S. Deale, "in consideration of the sum of $8000 to the said Speed and Waters, in hand paid, at and before the sealing and delivery of these presents." This latter deed also recites, that "for the conveyance and perfect assurance" of the said land to the purchaser, the said Speed and Waters, "have both agreed to unite in the execution of this indenture," and *both* of them unite in signing the receipt for the purchase money, appended to the deed.

Duly certified copies of these deeds, and of the bond, which was also recorded, were filed as exhibits with the petition of the appellee. This petition states, that the petitioner advanced to her son, John W. Waters, a considerable amount of money and property, which she specifies, in consideration that he would secure to her yearly the sum of $350, which he agreed to do, and that in consideration thereof and of natural love and affection, and in compliance with said agreement, her said son made the provision for her benefit contained in the deed of trust to Speed. It charges that Speed sold the personal estate of the value of about $4000, and the real estate for $8000, as appears by the deed therefor to Mrs. Deale; that the proceeds of the personal property was more than sufficient to pay all costs, commissions and expenses of the trust, all debts due by said Waters at its date, and all advances by Speed, thereby secured, so that, at least, the whole proceeds of the real estate was the net amount of the trust property upon which her annuity was chargeable. It also charges failure on the part of Speed to pay her annuity, and other mismanagement of the trust, and failure to report his proceedings in relation to the same, to the court, as required by the Act of 1845, ch. 166; his death and the utter insolvency of his estate, and that she had but recently discovered the provision in said deed in her favor. She then, by reason of the said bond, claims payment out of the estate of Kent, of the annuity already due with interest, and that she may be secured thereout, payment of the same hereafter during her life; and prays the court to pass an

order to that effect, and for subpœna to the administrator, widow and heirs at law, and for service of a copy of the petition and exhibits on them, to answer the premises and show cause why the order should not be passed as prayed.

On the 21st of May 1856, in notes then filed by the solicitor, representing this with other claims, the attention of the court was called to the claim of the appellee, as not having yet been stated by the auditor, nor answered, nor excepted to by the administrator and heirs at law. On the 19th of July 1856, the circuit judge declining to sit in the case in consequence of sickness, Thomas Donaldson, Esq., was, by agreement, appointed special judge, and qualified as such, and the case then being before him, was, by agreement, referred to a special auditor, who, on the 16th of January 1857, stated an account of the claims not excepted to, which was ratified, and on the 29th of January 1857, the special judge filed an opinion upon the various disputed claims then ready for adjudication, in which he laid down the principles of law which were to govern the determination of the merits of all the claims then filed. In this opinion he notices the claim of the appellee twice, first, by classifying it with other claims as being against Kent as surety, and secondly, thus: "In regard to the claim of Ann Janetta Waters, it is impossible in its present condition to pronounce any decision; the estate against which all these claims are presented seems to be solvent, and the time has not come for directing the auditor to state a final account, but considering all the circumstances there is nothing to warrant a suspension of other claims which are perfectly established, on account of this and others which have not yet been established."

On the 25th of February 1857, an order was passed by the special judge directing the petition of the appellee to be set down for hearing on the 1st of April then ensuing, provided a copy of said petition and order be served on the administrator, widow and heirs, or their solicitors or guardians, on or before a day limited. A copy was duly served, and the circuit judge having certified his ability to transact any business connected

with the case, an order was passed by him on the 29th of May 1857, in which, after stating that no answer had been filed to the petition of the appellee, he referred the same to the auditor to state the claim of the appellee as prayed in her petition, said statement to be "subject to the further order of this court, it not being the intention of the court to decide any rights of the petitioner by this order." On the 28th of October 1857, the administrator, widow and heirs at law, asked leave to file their answers to the petition, stating that they had, since the filing of said petition, been engaged in an effort to trace the transaction on which the claim is based, and the court, by order of the 21st of December 1857, granted the leave to file the answers, "to avail as if filed anterior to the order" of the 29th of May 1857, "subject to all just exceptions." The answers were then filed on the 12th of January 1858, not admitting the allegations of the petition, and putting the petitioners to full proof thereof, and of her claim, and alleging that by the terms of said deed of trust the grantor is authorised to receive, and did receive, the whole amount of the trust fund from Speed in his life time, and the whole trust was settled by payments for or advances made by Speed according to the requirements of the trust deed; and also denying the total insolvency of Speed's estate, and insisting that if the petitioner has any claim against the fund in court in this case, she must first exhaust her remedy against Speed's estate.

The auditor then, on the 22nd of January 1858, filed another statement of claims against the estate, in which, among others, he stated the claim of the appellee as directed by the order of the 29th of May 1857, and the court, on the 31st of May 1858, passed an order ratifying this statement and account, as to some of the claims, but passed no order as to others, including that of the appellee, stating as to these latter, that the papers had been so long in the hands of the special judge that there had not been sufficient opportunity for exceptions. On the 11th of June 1858, the appellee filed her further petition, in which, after stating the previous proceedings in reference to her claim,

she excepts to the answers thereto, which had been filed, and prays that they may not be considered and allowed, among other reasons, because the failure, neglect and omission of the parties to file them as required by the order of the 25th of February 1857, concludes them as to the facts stated in her first petition, and prevents them from denying the same, or calling on her for proof of the same, even if, under other circumstances, it would be necessary for her, in order to sustain her claim, to offer other proof than the deed of trust, the execution of the bond, and the sale of the property by Speed. She further insists that the question as to the insolvency of Speed's estate is no longer open in this case, so far as her claim is concerned, because there is ample proof in the case, to which her claim is entitled to the benefit, of the insolvency, or inability of Speed's estate to pay his debts, which proof has been decided sufficient by the special judge, and is conclusive as against the said administrator and heirs at law, and she therefore insists she is entitled at once to demand of this estate the whole of her said debt and claim. By an order passed on the 7th of August 1858, this petition was set down for hearing on the third Tuesday of September following, and it was further stated in this order, that all other claims will then be finally acted on. At the hearing, so ordered, the heirs at law filed exceptions to all these claims, which, so far as applicable to the present, are : 1st. Because it was decided on adversely by the special judge, as appears by his opinion. 2nd. Because they require full proof thereof, and the same has not been fully proved. 3rd. Because the trust estate was not sold, nor the money received by Speed; because Speed in his life time fully settled with John W. Waters, his grantor; and because the claimant has not exhausted her remedy against the estate of Speed. These exceptions, and all matters relating to all these claims, having been argued, the court, (BREWER, J.,) on the 6th of October 1858, delivered an opinion thereon, which, so far as it relates to this claim, is as follows :

"The special judge did not act on the claim of Mrs. Ann

Jannetta Waters, and it is now, for the first time, heard on its merits.

"The petition states, that she advanced to her son, John W. Waters, a considerable amount of money and property therein specified, in consideration of his undertaking to secure to her annually, during her life, the sum of $350, and that, in compliance with that undertaking, he executed to J. J. Speed, on the the 13th of February 1849, a deed, a copy of which is filed with the petition. There is no parol or written proof of this contract, or its consideration. A preliminary question was argued as to whether the case is *rectus in curia*, and also whether the proceedings in the case could be a taking of the petition *pro confesso*. The proceeding is in the usual and proper mode. In all cases of this kind an order is passed, appointing a day for hearing, provided a copy of the petition and order is served by a limited time, on the parties interested. When the appointed day arrives, and proof of service is filed, if no objection be made, the claim is referred to the auditor. If the parties interested are disposed to make objections, they are usually made in the form of an answer, and the case is taken up and decided to any extent that the judge deems expedient, which appears from the terms of his order. If testimony is required, an order is passed for taking it, and another day for hearing appointed. The mere circumstance of the passage of the order for reference, is never considered as taking the petition *pro confesso*. Indeed, the account *is most* always directed to be stated subject to exceptions, which is, in substance, the amount of the order in this case. In this case, also, after the statement of the account, the parties interested applied by petition, and were permitted to answer after the account was stated. The case, therefore, is fully before the court on its merits, and the first question raised is, as to the validity of the deed.

"It is a deed from John W. Waters to Jos. J. Speed, for the usual valuable consideration of $5, transferring the whole legal title to the grantee. Mrs. Waters is no party to it, nor is there

any consideration stated in the deed as passing from her. She is stated in the deed, however, to be the mother of the grantor, but as she is not seeking the enforcement of an agreement, it matters not what was the consideration passing from her to her son, or whether there was any consideration. The deed to Speed passes the legal title to him, and Mrs. Waters claims under the trusts declared by that deed, which she certainly can do without any consideration passing from her; see 19 *Eng. Law & Eq. Rep.*, 277, if any authority can be necessary for this point.

"It is said by the defendants that, as no valuable considera- tion appears to have passed from the *cestui que trust* to the grantor, the trust may be revoked at his pleasure. Cases may be found in *Hill on Trustees*, 110, on the subject of resulting trusts, in favor of this power of revocation, where the deeds have been kept in the possession of the grantor, and other cases *contra*, but these are cases where no trust has been de- clared, and another principle seems to pervade these cases, to wit: that the parties complainants were volunteers, in whose favor a court of equity would not execute a power, the act of the donor being incomplete. But all the authorities which are to be found on page 82, *et seq.*, of the same book, establish the principle, that where there is a conveyance of the legal inter- est, and a clear declaration of the trust, it is immaterial that the transaction is a purely voluntary one, and the trust will prevail against the person creating the trust, and all subse- quent volunteers claiming under him. Whether this princi- ple, however, is correct or not, seems to be immaterial. No attempt has been made to revoke this deed. No trust of the land was declared, but only of the proceeds of sale, which Speed was clearly entitled to make without the interposition or co- operation of any one. The grantor joined in the deed to the purchaser, and in the formal receipt for the purchase money *ex abundanti cautela* on the part of the purchaser to assure the title, as appears from the recitals in the deed to Mrs. Deale. Which of them actually received the purchase money, or in

what proportion, is not shown, but the trustee must be presumed to have done so, as it was his business to see to its proper appropriation. The trusts in the deed, I therefore think, must be enforced by the court.

"The question then is, what are the declared trusts of the deed? The first is to sell the land, which has been done. The proceeds are appropriated, first, to the expenses of the trust and commissions to the trustee, then to pay to Speed $500, which he had advanced to the grantor with interest. As to these two items, there is no dispute, but the declaration proceeds thus: "and any other advances or payments he may make for me." This provision, it is contended, authorised the grantor to receive or appropriate, any part of the proceeds of sale at his pleasure, without limit as to the point of time. Is this its true construction? A provision immediately following this, is in these words: "then in trust to pay out of the proceeds of sale all my just debts *that I now owe*, as, and when, he may be in funds to do so." ~ This last clause is in favor of creditors, and therefore, for a valuable consideration. Could the grantor revoke this provision by receiving or appropriating the whole proceeds of sale? I think not. Was it the intention of the grantor to reserve this right? I think not. The debts were to be paid, but when? "as, and when, he may be in funds so to do;" that is, *as* and *when* he received the purchase money, and after he had repaid his *other* advances to, and payments for the grantor. A period must elapse between *the execution of* the deed and the sale. During that time some advances and payments might be made by the trustee, and the duty of the trustee commenced to appropriate the proceeds in the order of the rights of the *cestui que trust*, paying his commissions and expenses and antecedent advances then made, and then to pay the grantor's debts, *as, and when, he should be in funds;* evidently contemplating a credit for a part of the land; and not to embarrass the trustee, payment of the creditors was to be made as he received the purchase money. After that was done, the trustee was to invest the balance *in his name*, for the use of

the grantor, but "out of the income *from said investment* and interest, to pay to my mother, Ann Janetta Waters, the sum of $350 *per annum*, during her life;" if it yielded so much, if not then all it does yield, and if it yielded more, "the net balance to be held in trust for me." The grantor certainly intended that all the certain provisions of this deed should be carried into effect. He intended that his debts should be paid, that his mother should receive *her annuity*, and after that, a *residue of interest* and the principal after her death, to be paid to him. He could not have intended to authorise the trustee to make *payments and advances* to him to the total exclusion of his debts and his mother's annuity:—he contemplated a considerable revenue. I think the trustee could make no advances or payments for the grantor to their exclusion after the sale, and that he had no power to pay over to, or permit the grantor to receive the whole proceeds of sale. He was bound to receive and pay over the proceeds according to the terms of the trust, and had no right then to pay over the whole to the grantor or to permit him to receive it. But what was actually done? The land was sold and the purchase money paid before the 18th day of July 1850, of which the deed to the purchaser is presumptive evidence, and the trustee is accountable for the proceeds.

"It is contended that Mrs. Waters must show what the balance was in hands of the trustee, before she can claim any amount to be invested for her benefit. I think not. The *onus* is on the trustee and his surety. It is enough for her to show that he received the money, and that there is a sufficient balance after the payment of the sums ascertained by the deed. The evidence of his expenses and of the sums paid by him for debts and advances, which he was authorised to make, of which *he alone* can be cognizant, and of which he ought to have the proper vouchers, must be produced by him.

"According to the decree of the special judge, the insolvency of Speed must be shown, but he has also decided that there is sufficient evidence of his insolvency available for all the

claimants. Independent of his decision, I should have thought that every claimant is bound to produce complete evidence of his claim, if required, and cannot avail himself of evidence taken by another claimant, unless the evidence be taken under an order applicable to his claim, or the claims generally. I shall, however, abide by the decision of the special judge.

"In the present state of the case, I think that Mrs. Waters has established her claim, to be allowed out of the estate a sufficient sum to secure her annuity from the time it commenced. In what manner that is to be done, whether a principal sum shall be set aside out of the estate, the interest of which, invested, will be sufficient to pay it, or a life-annuity purchased, may be the subject of arrangement between the parties or decided hereafter by the court—one or the other must be done."

Accompanying this opinion the court passed an order overruling all exceptions inconsistent therewith, and referring the case to the auditor to state a further account in conformity thereto, and stating that "such testimony as may be needed as to Mrs. Waters' claim, or any other needing a re-statement, can be taken by them on the usual notice, or if necessary, an order will be passed for taking it in any other form most convenient, or any evidence may be filed or taken, by consent, without a written order."

On the 28th of October 1858, by agreement of parties, certain extracts from the books of Speed were filed, in relation to the sales of the personal estate under the deed of trust from John W. Waters to him, and his disbursements of the proceeds. These extracts show sales of the personalty to the amount of $2340.90, and disbursements to the amount of $2406.58, leaving a balance of $145.60 due Speed. Appended to this account is a statement dated the 26th of June 1850, signed by Waters, in which he says: "I have carefully and repeatedly examined the above account and find it to be correct;" and also two other statements dated the 18th of July 1850, signed by Speed and Waters, as follows: "The above

account is all this day settled and closed, to the satisfaction of both parties.—Mr. Waters sold the farm.—J. J. Speed's charges and all claims are paid.—All settled and closed." By the agreement under which this paper was filed it was agreed, that the entries thereon are truly taken from the original books of accounts of Speed, and are in his handwriting, and that the signatures of Speed and Waters, where they occur, are in their handwritings respectively; it was further agreed that this paper is to be filed in the cause as proof only, as if filed and proved as above under a commission, subject, nevertheless, to all exceptions as to the admissibility of said evidence, whether as to the time the same was taken or otherwise. The claimant, then, filed exceptions to the admissibility of these entries:

1st. Because the defendants were concluded by the orders of the court passed in the cause, and the submission of the same, from taking any proof.

2nd. Because of the time when, and the circumstances under which, the same was taken and filed.

3rd. Because no acts or agreements of the said Speed and Jno. W. Waters could affect the rights of the claimant, secured to her by the deed of trust.

4th. Because, for the foregoing reasons and other causes, the same was impertinent, immaterial and irrelevant.

On the 22nd of December 1858, the auditor filed his report, statement and accounts, allowing this claim in full, which were ratified by an order passed on the 4th of March 1859, which order also decided further, that the annuity must be secured to be paid to the claimant yearly, and that she could not be compelled to take, in lieu thereof, an allowance in money. The administrators and heirs then appealed from the order of the 6th of October 1858, and all subsequent orders relating to this claim, including the order of the 4th of March 1859.

The cause was argued before LE GRAND, C. J., TUCK and BARTOL, J.

9    v.18

*Thos. G. Pratt* and *Thos. S. Alexander*, for the appellants argued :

1st. That the claim of the appellee should have been authenticated by such proof, as is required by law, to establish the same to the satisfaction of the orphans court, before it could be recognised by the auditor or court, as a claim legally filed against this estate; that unless a claim is so authenticated, it will not be allowed, although no objection should be made to it by any one interested. And, consequently, having never been so authenticated, has never been legally filed as a claim against this estate. *Alex. Ch. Pr.*, 129, 138, 141. 2 *H. & G.*, 234, *Strike vs. McDonald.* The appellee did not become a party to this cause until the filing of her petition, (12 *G. & J.*, 48, *Hall vs. Creswell; 3 Bland.* 497, *Post vs. Mackall,)* on the 28th of March 1856. She did not come in under the notice to creditors, and if not then too late, still, all objections to it were properly taken, and there is nothing in any of the proceedings, which concludes the appellants from making any objection to her claim they saw fit to make.

2nd. That where a claim, like this, is against the estate of a surety in a bond, the claimant is bound to prove the principal debtor insolvent, before she can be allowed to come against the estate of the surety. In this case the appellee has offered no proof whatever of Speed's insolvency. The proof taken by the other creditors cannot be considered as applicable to this claim. But that proof does not establish such insolvency, except in part, and even if it can be considered as applicable to this claim, still the claimant will be entitled to recover of this estate only so much as, by the proof, Speed's estate was inadequate to pay. *Alex. Ch. Pr.*, 139. 3 *Gill*, 94, *Clagett vs. Worthington.* 2 *Bland*, 516, 523, *Watkins vs. Worthington.* This point is open for review on this appeal, for though the special judge decided it the other way, still we could not have appealed in reference to this claim from that decision, because it was against the claim.

3rd. That the appellants, by their answers, having objected

to the allowance of the claim, and required full proof thereof, and having also filed exceptions thereto, demanding full proof, and such proof not having been furnished by the appellee, the claim should have been rejected, as the proof was decided to be insufficient by the special judge. 14 *Md. Rep.*, 166, *Ward vs. Hollins.*

4th. That the only hypothesis upon which it is assumed on the other side, that the claim is proved, viz: "That the neglect of the appellants to file their answer in time to the petition of the appellee, concludes then as to the facts alleged in the petition," cannot be maintained. No petition was necessary; the filing of the claim duly authenticated, either with or without a petition, would have made the appellee a party complainant in the cause. No answer was necessary or could be required, and no decree *pro confesso*, was, or could be passed. No objections or exceptions to the allowance of a claim need be filed until the claim is so authenticated as to authorise its allowance by the court, and where the proof offered in support of a claim, is determined by the court to be insufficient without exception thereto, it must be unnecessary to file exceptions until some additional proof is offered. *Alex. Ch. Pr.*, 128. 2 *H. & G.*, 234, *Strike vs. McDonald.*

5th. That the entire fund arising from the sale of the property conveyed by the deed from Waters to Speed, was exhausted either in payments for, or advances to, the grantor. By the provisions of the deed, the proceeds were to be applied to payments and advances *made* by Speed to Waters, and also to advances *to be made* before any part was to be applied or invested for any other purpose, and no liability can result from the application of the fund in the manner so expressly provided for in the deed. No question arises in this case, in reference to the creditors of Waters; they have been all paid, and the limitations in the deed for their benefit, can add nothing to the support of the other limitations in that instrument. But even in the case of creditors, a deed executed without their knowledge by their debtor, is revocable by the debtor, *a fortiori,*

as in this case, executed by the son without consideration and without the knowledge of the mother, would be revoked by the sale of the property, and receipt of the purchase money by the son. On this point, and as to the construction of this deed, see 2 *Story's Eq.*, secs., 972, 1036, *b.* 2 *Mylne & Keene*, 492, *Acton vs. Woodgate.* 3 *Simons*, 14, *Walwyn vs. Coutts*, and same case in 3 *Merivale*, 707. 3 *Merivale*, 662, *Scott vs. Porcher. Ibid.*, 249, *Sutton vs. Chetwynd.* 3 *Simons*, 1, *Garrard vs. Lauderdale.* 2 *Cox*, 355, *Bland vs. Bland.* 1 *Brown's Ch. Rep.*, *(Perkins' Ed.)* 165, *Wynne vs. Hawkins*, and *notes.* 2 *Brown's Ch. Rep.*, *(Perkins' Ed.* 454,) *Sprange vs. Barnard.* 2 *Ves., Jr.*, 533, *Malim vs. Keighley.* 16 *Md. Rep.*, 56, *Kalkman vs. McElderry.* The deed, therefore, containing this power of revocation, or a power which enabled the grantor to defeat its whole provision by appropriating the whole trust property to his own use, it was null and void. 2 *Johns. Ch. Rep.*, 579, 580, *Riggs vs. Murray.*

*Frank. H. Stockett*, for the appellee, argued:

1st. This estate was not settled up when this claim was filed, and it was not, therefore, filed too late; the notice to creditors does not debar a party from filing his claim if the estate has not been settled up. It was therefore filed in time, and the question is, was it properly proved? There was no necessity for an affidavit to the claim; the law in this respect applies only to proceedings in the orphans court, and besides, the defendants having demanded full proof, they thereby waived all preliminary proof, and cannot now make the objection, that proper precautionary proof was not furnished. The copies of the deeds and bond filed with the petition of the appellee, prove themselves, and the recording of the deed, and the execution and recording of the bond by Speed and Kent, are proofs by record that he accepted the trust, and therefore, it was incumbent on the defendants to show *affirmatively* that Speed had discharged all the trusts of the deed; what were the

costs and commissions paid or retained by him, what remain-ed of the proceeds of sale after paying these expenses, and the sum of $500 and interest, advanced by him to Waters, and what other advances, if any, were made by him, and also what debts Speed paid and to whom. No debts, except those owing by Waters at the *date* of the deed, could have been paid by the trustee to defeat the trust to the appellee. Execution, delivery and recording, are evidence of acceptance by the beneficiaries under the deed. 11 *Md. Rep.*, 41, *Hutchins vs. Dixon.* 2 *Story's Eq.*, sec. 1036, *a,* and *note* 1, sec. 1037, and *note* 2. *Hill on Trustees*, 82 to 89, 230, *note* 1, 330. 1 *Vernon*, 28, *Purefoy vs. Purefoy.* Even if the papers filed by agreement on the 28th of Oct. 1858, relating to the disposal of the *personal* property, be admitted as proof of a proper disposition of the same by the trustee under the deed of trust, to defeat the claim of the appellee on the same, yet it is *affirmatively* shown by her, that the real estate sold for $8000, by the deed to Mrs. Deale, which is not accounted for in any way, and which was more than sufficient to have secured to her the payment of her annuity.

2nd. The deed of trust executed and recorded is *alone* sufficient proof of the consideration, and the deed must interpret itself, and can alone explain the duties of the trustee with his liabilities, and the rights and interests of the parties under it. 11 *Md. Rep.*, 40, *Hutchins vs. Dixon.* 1 *H. & G.*, 74, *Ringgold vs. Ringgold.* 2 *Md. Ch. Dec.*, 204, *Brown vs. Waters.* Even if it had been proved, in the cause, by the appellants, that Speed had never received one dollar of the money for which he sold the real and personal estate conveyed to him by the deed, still he would equally have been responsible for the misapplication thereof, though the grantor himself had received every dollar, and executed full releases to him for the same. The deed gave no power to John W. Waters to destroy or vacate the trust. By his deed to Speed, he had divested himself of all control over the estate. His joining in the deed to Mrs. Deale was simply useless, and even if that were proof

of his receipt of every dollar of the purchase money, it would not relieve Speed. He could not renounce so as to defeat the interest of the *cestui que trust*. For these positions, see 4 *Gill*, 395, *Dolan and Foy*, vs. *Mayor & C. C. of Balt*. 19 *Eng. Law & Eq. Rep.*, 276, *Drosier vs. Brereton*. 6 *Eng. Law & Eq. Rep.*, 91, *Hutchins vs. Hutchins*. 2 *Peere Wms.*, 680, 681, *Mansell vs. Mansell*. *Hill on Trustees*, 218, 219, 221, 382, 384, 385, 388. 2 *Story's Eq.*, secs. 1275, 1276. *Lewin on Trust*, 260, 317, 357 to 367. 12 *G. & J.*, 108, *Hatton vs. Weems*.

3rd. Kent being only surety for Speed, still his estate is fully bound for all the defalcations of Speed, being co-obligor in the bond, and jointly and severally bound with Speed, and being also the *only* surety. Nor is the appellee compelled to seek payment of her claim from Speed's estate, or to prove it insolvent before she can hold Kent's estate responsible; but if this were so, it is proved in the cause, of which this claim is an integral part, that Speed's estate was insolvent, (6 *Gill*, 302, *Comist vs. Wilson*,) and the special judge has decided that such proof is for the benefit of all the creditors, and that it is sufficient for the purpose, and that in all those cases such as this, of *one surety only*, the creditor has the right to have his claim paid in full out of Kent's estate, and this decision has never been appealed from, and is binding and conclusive in this case.

4th. That even if, under different circumstances, it was incumbent on the appellee to have offered other proof of her claim than the execution of the deed of trust, the bond and the sale of the property by the trustee, yet the omission and neglect of the appellants to file their answers, as required by the order of the 25th of February 1857, concludes them as to the facts stated in the petition, prevents them from the denial of those facts, and from calling on the appellee for proof of the same, and the claim must be admitted *pro confesso*.

Kent, *et al.*, *vs.* Waters.

LE GRAND, C. J., delivered the opinion of this court.

It is the opinion of a majority of the judges who heard this appeal, that by the trusts declared in the deed from John W. Waters to J. J. Speed, the grantor, in effect, reserved the right to use the whole trust funds, by requiring advances or payments to be made on his account, and that this power of appropriation might be exercised by his selling the land and receiving the purchase money, or directing its application for his own use. The effect of this construction of the deed is, that as to so much of the purchase money as John W. Waters received, or had the benefit of, Speed was not liable as trustee. The decree of the court below must therefore be reversed.

The appellants were not concluded by the order of February 25th, 1857, as supposed by the appellee's counsel. On this point we agree with the Circuit judge, who has stated the practice in chancery in such proceedings. The claim was not disposed of by the special judge, and the Circuit judge states that it was heard on its merits, for the first time, when his opinion was filed.

The paper filed on the 27th of October 1858, copied from Speed's books, was admissible, under the agreement, to that effect. The judge had expressly allowed further proof to be taken by agreement, or in the usual mode, and the parties did agree to admit this paper, subject to exceptions. The first objection we have noticed—the heirs were not precluded from taking proof by any previous order or proceeding. The second objection is answered by the remark, that the case had not been finally disposed of, and the permission to take proof had been expressly given with a view to the final action of the court. As to the third:—If, as this court has decided, the grantor had a right to control the proceeds of sales, at any time before investments were made, it is clear that his acts may be proved to show that the trustee had disposed of the funds according to the trust, or that the grantor had done so himself, by the exercise of the power of sale and appropriation. The books certainly ought to be evidence, vouched as

they are by the signature of the grantor, to show what money had been received by the trustee, and how applied, as far as John W. Waters had connection with the application. His orders on Speed would be evidence, and surely an account of the trust, verified by him, would bind all persons claiming against the trustee and his surety. Of course, if John W. Waters had no right to sell the land and control the proceeds of sale, the argument of the appellee's counsel against the introduction of this paper to bind Mrs. Waters by the acts of her son, would be unanswerable; but, as we have said, this is not the true construction of the deed of Waters to Speed.

These observations dispose of this appeal. But we deem it proper to advert to some matters of practice discussed at the bar.

As to the proof of Mr. Speed's insolvency:—The evidence on this question was taken by other persons than the present claimant, before she became a party to the proceedings, and, we think, the heirs are not more bound by it, than she would have been by proof against her interests. It is not like a final decree for a sale, which establishes the complainant's claim as against all persons. Here the question of Speed's solvency is raised merely for the purpose of letting in claims against the estate of a surety, and although under a general order to take proof, all creditors as well as the heirs, might be bound by the evidence so taken, it does not follow that creditors coming in afterwards would be concluded, nor ought the heirs at law to be, in reference to such subsequent claims. The circuit judge was of this opinion, but he felt himself constrained to follow the order of the special judge, who had decided that the insolvency was proved.

It was not necessary to accompany the claim by the oath of Mrs. Waters. "The appellants, by their answer, called upon the appellee for full proof of her claim; and this requisition, *per se*, would have dispensed with the ordinary precautionary proof of their claim prescribed by our testamentary system, had it been made against the estate of a deceased person. ❋ ❋ ❋ Pri-

mary proof stand in the place of full proof, until full proof is demanded. From that moment they ceased to be any evidence in the case, and there no longer exists any necessity for their production." *Allender vs. Trinity Church*, 3 *Gill*, 166.

With these views we reverse the decree of the Circuit court, and dismiss the petition of the appellee.

*Decree reversed and petition of appellee dismissed,*
*each party to pay their own costs.*

(Decided November 4th, 1861.)

Tuck, J.—1 dissent from so much of the above opinion as places a construction on the deed from Waters to Speed.

A motion was made during the term by the counsel for the appellee, for a re-argument of this case. At the hearing of this motion before *Bowie, C. J., Bartol, Goldsborough and Cochran, J.,* the court overruled the same, and said that they would adhere to the rule adopted by the Supreme Court of the United States in the case of *Brown vs. Aspden,* 14 *How.*, 25, viz: That a re-argument of a case decided by this court, will not be granted unless a member of the court who concurred in the judgment desires it, and, when that is the case, it will be ordered without waiting for the application of counsel.