HENRY STEVENSON, *et al vs.* EDWARD SCHRIVER AND WIFE.—*December, 1837.*

By the first section of the act of 1818, ch. 204, a party deeming himself aggrieved by the orders or decrees of the Orphans courts, may appeal to the court of Appeals, and the term "party," does not necessarily mean a litigant before the court, when the order or decree is passed, but any one on whose interests such order or decree has a direct tendency to operate injuriously.

An order of the Orphans court passing a claim of the executor, or administrator, against the estate, may be appealed from by a distributee or by a creditor, where the assets of the deceased are inadequate to the payment of debts.

The power of the Orphans courts in passing claims against the estate of the deceased, is not confined to strictly legal claims, but embraces every species of indebtedness, whether legal or equitable; nor is their authority in this respect limited to such as are proved according to the act of 1785, ch. 46.

They do not derive their power to pass open accounts from the 8th sec. of the 9th sub ch. of the act of 1798, ch. 101, nor are their powers on that subject imperatively restricted by it. The object of that section was to restrain the authority of executors and administrators in the payment of open accounts, not passed by the court, to such as were proved in the mode thereby prescribed.

The power of the Orphans courts in passing accounts before payment, is derived from the second section of the act of February session, 1777, ch. 8, and the first section of the 15th sub ch. of the testamentary system.

A testator bequeathed to his two grandaughters $9,000 each, with a direction that the said "legacy should be understood and deemed as given and bequeathed unto them, as their property respectively, and not either to their respective husbands or to their father," &c.

In a subsequent clause the testator said, "it is my will that if either of my said grandaughters should die under the age of 21 years unmarried, and without having any child or children, as aforesaid," then over to the survivor, &c.

Upon this will it was *held,* that upon the marriage of either of the legatees, the legacy vested absolutely in her, and that such portion of it as was re-

ceived by her husband during coverture, in virtue of his marital rights, became his property, for which his estate could not be charged by his widow after his death.

Appeal from the *Orphans* court of *Baltimore* county.

On the 15th of April, 1837, *Elizabeth L. Stevenson,* widow of *Josias Stevenson, Jr.* late of *Baltimore* city, deceased, filed her petition, alleging that she is a creditor of the estate of her said husband, to the amount of $9,763 04, with interest thereon from the 25th day of May, 1825, and that she became the creditor *by reason of the conversion by her husband, of moneys belonging to her (in her sole and exclusive right, and under the management of trustees for her separate use)* to his own proper use, her said husband receiving the said amount, *under his promise and agreement to invest said moneys for the benefit of your petitioner,* but neglecting to make said investment as agreed upon. That upon the bill of complaint of one *Henry Stevenson,* filed in the High Court of Chancery, such proceedings were had, that the creditors of her said husband were ordered by the chancellor to file their claims, whereupon, your petitioner filed her claim for the amount of said moneys, so received by her husband in the said cause so instituted in the High Court of Chancery, as by an attested copy of said claim, herewith filed, marked exhibit A, which she prays may be had and taken as a part of this, her petition, will more fully appear. That the said bill of complaint was dismissed by the court of Appeals, and that your petitioner and her co-administrator are desirous to close their trust, and she prays, *that they may have a credit in their account,* as administrators, *for the amount of your petitioner's dividend of the assets, which may be declared on her claim aforesaid,* and that your Honours will pass an order allowing said claim against said estate, &c.; and she here exhibits as part of this, her petition, marked exhibit B, (and she prays it may be so considered,) an exemplification of the will of her grandfather, *Dr. Albert Du Fresne,* which vested in her for her sole and separate use, the moneys so converted by her husband as aforesaid.

*Exhibit A, to said petition.*

BALTIMORE, *March* 2*d*, 1835.

*The Estate of Josias Stevenson, Jr. deceased.*

1825.         TO ELIZABETH L. STEVENSON.         DR.

May 25.—For this amount received by you for
my sole and separate use from the executors
of *Dr. Albert Du Fresne*,      -      -      -      $9,763 04

*City of Baltimore, sct:* Be it remembered, that on this
second day of March, in the year eighteen hundred and
thirty-five, before the subscriber, a justice of the peace, in
and for the city aforesaid, personally appeared *Elizabeth L.
Stevenson*, and made on oath on the Holy Evangely of Al-
mighty God, that the above account is just and true, as it
stands stated, and that she hath not, directly nor indirectly,
received any part or parcel thereof, or security or satisfaction
for the same.    And at the same time also appeared *Philip
Reigart*, and made oath on the Holy Evangely of Almighty
God, that the executors of *Dr. Albert Du Fresne* paid to
*Josias Stevenson, Jr.* in his life-time, and about the month of
May, in the year eighteen hundred and twenty-nine, or some
time in that month, a sum of money between nine and ten
thousand dollars, which the said *Josias Stevenson* had pre-
viously agreed to invest in property for the use of the said
*Elizabeth L. Stevenson*, but which investment the said *Josias
Stevenson* did not make.

Sworn before         WM. P. STEWART.

True copy.—Test,    RAMSAY WATERS, *Reg. Cur. Can.*

*State of Maryland, City of Baltimore, sct:* On this four-
teenth day of April, 1837, before the subscriber, a justice of
the peace, in and for the city aforesaid, personally appeared
*Elizabeth L. Stevenson* and *Philip Reigart*, and severally
made oath on the Holy Evangely of Almighty God, that the
matters stated in the within copy of an affidavit formerly
made by them are just and true as within stated, and that the
within account is *bona fide*, due as therein stated.

FRS. FORSTER.

*Exhibit B.*  Extracts from the will of *A. Du Fresne :*

2d ITEM.—I do give and bequeath unto my two grand-daughters, *Elizabeth Reigart* and *Maria Reigart,* the children of my dearly beloved daughter *Albertina Reigart,* deceased, late *Albertina Du Fresne,* the sum of eighteen thousand dollars ; that is to say, the sum of nine thousand dollars to each of my said grandaughters, *as and for their absolute property, which said sum is to be taken and set apart for that purpose out of my personal estate, by the executors of this my last will and testament,* and the guardians of my said grandaughters herein after named and appointed, as soon as conveniently may be done after my decease, subject, nevertheless, to the restrictions and limitations herein after mentioned and expressed.

3d ITEM.—It is my will, and I do order and direct, that the aforesaid legacy, or sum of eighteen thousand dollars, shall be understood and deemed as given and bequeathed unto them *as their property respectively,* and *not either to their respective husbands or to their father, Philip Reigart, nor the step-brothers or step-sisters,* in case they or either of my said grandaughters, *Elizabeth* or *Maria,* should happen to die without having any child or children ; and if either of them, the said *Elizabeth* or *Maria,* should die without having any child or children, then the whole of the said legacy or sum, shall descend, come, and belong, and I hereby bequeath the same unto the survivor of them.  But in case they should both die without leaving any child or children, then and in that case, I do give and bequeath the whole and every part of the said legacy or sum of eighteen thousand dollars unto my son *Samuel Du Fresne,* or his legal heirs and representatives.

4th ITEM.—It is my will, and I do direct, that the aforesaid legacy or sum of eighteen thousand dollars, shall be placed out and continued at interest on good and sufficient security, as herein before ordered, by the executors of this my last will and testament, and the guardians of my said two grandaughters, herein after named, or the survivor of them, and be under the control and management, superintendance and discretion of my said executors and guardians, for the use and

benefit of my said grandaughters, *Elizabeth Reigart* and *Maria Reigart;* and that they, the said executors and guardians, or the survivors or survivor of them, do add the interest thereof as the same shall accrue or accumulate from time to time, (excepting, nevertheless, the sum of two hundred dollars, part of the said interest, yearly herein after allowed unto their said father, *Philip Reigart,*) shall be paid unto my said granddaughters, *Elizabeth Reigart* and *Maria Reigart,* to be equally divided between them on their severally attaining the full age of twenty-one years, or at the time of their marriage, in case they or either of them intermarry *after* attaining the said age respectively.    And that the sum of two hundred dollars, part of the said interest, be paid to their said father, *Philip Reigart,* to be by him applied for the support, maintenance, and education of my said two grandaughters, *Elizabeth* and *Maria,* in a decent and becoming manner ; but if the said *Philip Reigart* should omit or neglect to apply the said two hundred dollars for the support, maintenance, and education of my said two grandaughters, then and in such case my said executors and guardians shall, and may withhold and detain the said sum, and apply it to and for the use and benefit of my said two grandaughters, in such manner as they, my said executors and guardians, herein after named, or the survivors or survivor of them, in their best discretion may think proper or necessary.

5th Item.—It is my will that if either of my said grandaughters, *Elizabeth Reigart* or *Maria Reigart,* should die under the age of twenty-one years unmarried, and without having any child or children as aforesaid, then and in such case, *I do give, devise, and bequeath the whole of the said legacy or sum of eighteen thousand dollars, unto the survivor of them, in absolute property ;* but if both the said *Elizabeth* and *Maria* should happen to die under the age aforesaid, unmarried and without leaving any children, then and in such case I do give, devise, and bequeath the whole of the said legacy, or sum of eighteen thousand dollars, with all the increase thereon, (if any) unto my said son *Samuel Du Fresne,* his heirs, execu-

tors, administrators, and assigns, to and for his and their behoof in absolute property.

8th Item.—As to all my moneys, estates, effects and property, of what nature or kind soever the same may be, which I am or may be entitled to, in any part of Europe, whenever the same shall be recovered, received, or remitted hither into this country, I do give, devise and bequeath the same in manner following, to wit: one equal half part thereof I do give, devise and bequeath unto my said son, *Samuel Du Fresne*, his heirs, executors, administrators, and assigns, to and for his and their proper use and benefit and behoof, in absolute property; and the other equal half part thereof I do give, devise and bequeath unto my said grandaughters, *Elizabeth Reigart* and *Maria Reigart*, share and share alike, to wit: the one equal fourth part thereof to each of them: and in case of the death of my said two grandaughters under the said age of twenty-one years, unmarried, and without leaving any child or children, then her said share or one-fourth part shall come to, and *I do hereby give, devise and bequeath the same, in absolute property, to the survivor of them ;* but if both my said grandaughters should happen to die under the said age, unmarried, and without leaving any child or children, then and in such case, the said two equal fourth parts hereby given unto my said two grandaughters shall come or belong, and I do hereby give, devise and bequeath the same in absolute property unto my said son, *Samuel Du Fresne*, his heirs, executors, administrators, and assigns, to and for his and their proper use, benefit and behoof.

9th Item.—As to all the rest, residue, and remainder of my moneys, estate, effects, goods and chattels, or moveable property whatsoever, and of what nature or kind soever, and wheresoever the same may be, and not herein before particularly given, devised or bequeathed, and which I am or may be entitled unto at the time of my death, without any inventory thereof to be made, taken or, rendered, or any part thereof—and as to all and singular my messuages, houses and lots, or pieces or parcels of ground, lands, tenements,

and hereditaments which I may die possessed of, or may be in any manner seized of and entitled unto, situate in the said city and county of *Lancaster*, in the state of *Pennsylvania*, or elsewhere in any part of the United States of America, with their and every of their rights, members, and appurtenances, I do give, devise and bequeath the same, unto my said son, *Samuel Du Fresne*, his heirs, executors, administrators, and assigns, for ever subject to, and charged nevertheless, with the said two legacies herein before given and bequeathed unto my said brother and sister, to be paid to them severally, in manner herein before mentioned and directed.

And lastly—I do hereby nominate, constitute and appoint, my said son *Samuel Du Fresne*, and my trusty friends, *Peter Reed*, (saddler,) and *Philip Gloninger*, both of the said city of *Lancaster*, and the survivors and survivor of them, to be the executors and executive of this my last will and testament, and also guardian and guardians over the moneys, effects, and estates, herein before given, and devised unto my said grandaughters *Elizabeth Reigart* and *Maria Reigart*, during their minorities, respectively, hereby revoking all former and other will or wills, testament and testaments, by me made; and declaring this, and no other, to be and contain my last will and testament. In witness whereof, I have hereunto set my hand and seal, the eighth day of December, in the year of our Lord one thousand eight hundred and twenty.                          A. Du Fresne. [Seal.]

And afterwards, to wit: on the 1st day of May, in the year 1837, *Henry Stevenson*, *Urath Stevenson*, *Urath Stevenson executrix of Josias Stevenson*, *Sr.* deceased, *Job Smith, Jr.* judgment creditors of the estate of *Josias Stevenson, Jr.* deceased, and the said *Urath*, as executrix aforesaid, being also one of the legal distributees of said estate, come here into court and caution the court against the passage of a claim against said estate, presented here by *Elizabeth Stevenson*, and filed with her petition aforesaid. And these creditors and distributees as aforesaid, respectfully protest against the allowance of said claim, and indeed against this court taking any order in the premises.

1. Because they deny the facts stated in the petition and affidavits attached to the claim, so far as they represent and attempt to shew that the said *Elizabeth* hath any just demand against said estate.

2. Because the will filed makes no such disposition of a fund for the benefit of said *Elizabeth*, as is specified in said petition.

3. Because the deceased husband of said *Elizabeth*, never received at any time any moneys from the persons under the circumstances, and for the uses of said *Elizabeth*, as is specified in said petition, account, and probat thereon.

4. Because the affidavits attached to said claim are insufficient to exhibit it before this court.

5. Because the said claim is irregularly, illegally, informally, and insufficiently made out and offered here.

6. Because the said claim is, and all claims that the said *Elizabeth* may ever have had against said estate, are barred by limitations. They are of more than three years standing, since the acts of limitation began to run against them, and these creditors and these distributees plead said acts of limitation in bar of said claim and claims, and pray to be allowed the benefit thereof.

7. Because the said claim was not adduced and exhibited in this court within the time limited and specified in the publications made by the administrators on *Josias Stevenson, Jr's* estate, for notifying creditors to bring in their claims, and also specified in the order of this court passed in that behalf.

The parties then filed in court a commission, containing certain proofs admitted by consent, a part of which only are material in the view taken by the court, viz. :

*Samuel Dale*, examined on behalf of the defendants, deposeth as follows :

2d. Have you any knowledge of a legacy bequeathed to the said *Elizabeth L. Stevenson*, by her grandfather, *Albert Du Fresne*, of the city of *Lancaster*, in the state of *Pennsylvania;* if so, please state the amount thereof, and the circumstances by which the said legacy was attended as regards the

payment of it over, and annex to your answer an examined and authenticated copy of the last will and testament of the said *Albert Du Fresne,* whereby said legacy was bestowed.

To said second interrogatory he deposeth as follows: Deponent says that he has knowledge of the legacy bequeathed to *Elizabeth L. Reigart,* now *Elizabeth L. Stevenson,* by her grandfather, Dr. *Albert Du Fresne,* late of the city of *Lancaster,* in the state of *Pennsylvania.* Deponent says that the amount due to *Elizabeth L. Stevenson* after the death of her sister *Maria,* under the will of her grandfather, Dr. *Albert Du Fresne,* deceased, was eighteen thousand dollars; and at the time it was settled, in 1829, when the executors were released, the legacies with their interests were nineteen thousand five hundred and twenty-six dollars and eight cents. Deponent says, some time in 1828 *Josias Stevenson, Jr.* came to the city of *Lancaster,* and demanded the legacy coming to his wife under the will of her grandfather, Dr. *Albert Du Fresne,* deceased. Dr. *Samuel Du Fresne,* one of the executors, agreed that he would give him the legacy coming to her, although she was under age, if he would take one-half of it in real property for her use, and the other half he would pay in cash. Some deeds were drawn by me, and executed by Dr. *Samuel Du Fresne* to that effect, and sent on to him. *He, the said Josias Stevenson, Jr. some time after came to Lancaster, perhaps in 1829, the time I do not exactly recollect,* and said he would be entitled to receive. *Deponent says that Josias Stevenson, Jr. told him he could not obtain that security here, but could do it if he were at home in Baltimore, and that he wondered why they, the executors, should ask it of him.* Deponent says, *he replied, that the executors were anxious to have the property secured* to *Elizabeth L. Stevenson.* Deponent says that he, *Josias Stevenson, Jr.* then replied, *if he got the cash* he *would apply the same in purchasing real property in the city of Baltimore* for *her, Elizabeth L. Stevenson's use,* and THAT IT COULD BE AS WELL SECURED THERE *as in the city of Lancaster for her.* Deponent says, that *Josias Stevenson, Jr.* remained in the city of *Lancaster*

at one time for about three days, during which time he frequently called at my office, and we had *frequently conversations to the same effect as what is detailed above.* He, *Josias Stevenson, Jr.* borrowed the acts of assembly from me in relation to the refunding bond; he said he would take them and consult his attorney in the city of *Lancaster.* He, the said *Josias Stevenson, Jr.* finally agreed to take nearly the one-half in real property in the city of *Lancaster,* transferred for the use of his wife, and the balance in cash; and on the twenty-fifth day of May, 1829, he released and discharged the executors and guardians, to wit: Dr. *Samuel Du Fresne* and *Peter Reed.* Deponent has no recollection of what took place when the money was paid, or of any conversation that took place at that time. Deponent has examined the exemplified copy of the will of Dr. *Albert Du Fresne,* deceased, being endorsed complainants' exhibit A, and believes it to be a correct copy.

4. Do you know whether or not previously to the said payment, or at the time thereof, the said *Josias Stevenson, Jr.* on his part expressly undertook and agreed to invest the amount of the said legacy in some property for the sole and separate use of the said *Elizabeth L. Stevenson,* and whether or not the said payment was not made to him upon his said undertaking and agreement, and at his solicitation. State all your knowledge of the matters inquired of fully and in detail.

To said fourth interrogatory he deposeth as follows: Deponent states, that he has no other knowledge of any undertaking or agreement of the said *Josias Stevenson, Jr.* or any other circumstances connected with the payment of the legacy to him, other than that detailed in answer to the second interrogatory. *Said Josias Stevenson, Jr. did repeatedly solicit the payment of the legacy,* and the *delay arose from the anxiety of the executors and guardians* to *secure the interest of Elizabeth L. Stevenson.* The legacy, when paid as aforesaid, was paid by her consent. Deponent has no distinct recollection of any other matters inquired of in this interrogatory, than such as

he has detailed in his answer to the second interrogatory, and in his answer given to this interrogatory.

On the application of *Edward Schriver*, alleging his marriage with *Mrs. Stevenson*, he was admitted a party to the suit, and filed the following affidavit:

*Baltimore City*, sct.—On this 13th day of October, 1837, before the subscriber, a justice of the peace in and for the city aforesaid, personally appeared *Edward Schriver* and *Elizabeth L. Schriver*, (formerly *Elizabeth L. Stevenson*,) which *Elizabeth L. is one of the administrators of Josias Stevenson, Jr. late of Baltimore city, deceased, and made oath, that it doth not appear from any book or writing of the said Josias Stevenson, Jr. that any part of the claim heretofore made and filed in the Orphans court of Baltimore county, by the said Elizabeth L. then Elizabeth L. Stevenson, against the estate of the said Josias Stevenson, Jr. hath been discharged, and that to the best of the several knowledge and belief of said deponents,* no part of the said claim hath been discharged, and no security or satisfaction hath been given for the same.    Sworn to before, &c.

The Orphans court (HARWOOD and WARD, Judges,) decided *that the claim made by the said petitioner, against the estate of the said deceased, for the sum of nine thousand seven hundred and sixty-three dollars and four cents, with interest thereon from the 25th day of May,* 1825, *is just and legal, and ought to pass.* It is, therefore, on this 8th day of November, in the year eighteen hundred and thirty-seven, ORDERED and DECREED by the Orphans court for *Baltimore* county, that the account or claim of the said *Elizabeth*, of nine thousand seven hundred and sixty-three dollars and four cents, with interest thereon from the 25th day of May, 1825, against the estate of the said *Josias Stevenson, Jr.* deceased, *be, and the same is hereby passed by the court, and that she be allowed in her administration account for the amount of said claim, with interest as aforesaid, or her just proportion or dividend of assets in the hands of the administrators of said deceased, in case his personal estate should not be sufficient to pay all his debts.*

RIDGATE, Judge, dissented.

The creditors and distributees of *Josias Stevenson, Jr.* appealed to this court.

The cause was argued before STEPHEN, ARCHER, and DORSEY, Judges.

By SPEED, for the appellants, and
By R. JOHNSON and D. STEWART, for the appellees.

DORSEY, Judge, delivered the opinion of the court :

The first in point of order of the questions which have been discussed in this case, is, have the appellants a right to appeal from the order in question, passed by the Orphans court ?

By the first section of the act of 1818, ch. 204, a party deeming himself aggrieved by the decree, order, or decision of the Orphans court, may appeal to the court of Appeals. The term party, in this section of the act of assembly, is not used in a technical sense, necessarily importing a litigant before the court, in the proceedings in which the decree or order passed, at the time of or antecedently to its passage; but may also mean one on whose interests the decree or order has a direct tendency to operate injuriously, and who, after its passage, may appear in court and claim the privilege of appeal. Many, if not most of the orders of the Orphans court, are wholly *ex parte*, and yet the right to appeal has never been denied to him who has sustained an injury thereby.

The only inquiry, then, on this question, is, has the order before us an evident tendency to impair the rights of the appellants ? We are of opinion that it has. For *argumenti gratia* conceding, as is alleged, that the passage of the claim of an executor or administrator, by the Orphans court, is not conclusive upon a distributee or creditor suing such executor or administrator, and leaves him at liberty to shew the illegality of the allowance thus made; yet it so increases the difficulty of so doing, that such an order cannot be said not to

impair the rights of a distributee, or of a creditor, where the assets of the deceased are inadequate to the payment of debts. The allowance of the claim is *prima facie* evidence of its correctness, and the executor or administrator need offer no further evidence to sustain it.    The *onus probandi* is shifted from the executor or administrator to the creditor; and in most cases under circumstances, where the proof given in support of it, is wholly unknown to him, and consequently he can have no means of shewing its insufficiency.    It is a proceeding *ex parte* in its nature, and of which no record is required to be kept; the only evidence of its existence is the endorsement upon the voucher, which remains with the executor or administrator, unless he gratuitously files it with the register.    The executor or administrator then has nothing to do but to pass his account before the Orphans court, pocket or destroy his voucher; and the distributee has no means of impeaching the allowance made him, or disproving its correctness.    From an order placing a distributee or creditor in such a condition, there surely ought to be a right of appeal.

The appellants' first point cannot be sustained.    The authority of the Orphans court, in passing claims against the estate of a deceased, is not as has been contended, confined to strictly legal claims, but embraces every species of indebtedness, whether legal or equitable in its nature; nor is their power to pass accounts limited to such as are proved according to the requisitions of the act of assembly of 1785, chapter 46.

They do not derive their power of passing open accounts, as is assumed by the appellants' counsel, under the 8th section of the 9th sub ch. of the act of 1798, ch. 101, nor are their powers on that subject imperatively restricted by it.    The object of that section of the testamentary system, was to restrict the authority of executors and administrators in the payment of open accounts, not passed by the Orphans court, to such as were authenticated in the mode thereby prescribed.    The powers of the Orphans court in passing accounts anterior to their payment, is derived from the 2d section of the act of February session, 1777, ch. 8, and the 1st section of the 15th sub ch. of the testamentary system.

The will of *Doctor Albert Du Fresne* is inartificially drawn, and no interpretation can be given to it in reference to the question now before us, which can be regarded as free from all objection. But on collating the 2d, 3d, 4th, 5th, and 8th clauses of the will, we are of opinion that there is no such distinct and unequivocal expression of the intention of the testator, to limit the legacy to his grandaughters, to their sole and separate use, to the exclusion of the marital rights of the husband, nor such proof in the record of an agreement by *Josias Stevenson*, the deceased husband, to hold or use it as such, as could be enforced by any judicial tribunal. The intention of the testator we think is expressed in the *fifth* clause of his will, and that upon the marriage of *Elizabeth Reigart* the legacy vested absolutely in her, and that such portion of it as was received by the deceased husband during coverture, in virtue of his marital rights became his absolute property, and consequently, that the claim now preferred by his widow against his estate cannot be supported. This court will sign a decree reversing the order of the Orphans court with costs, to the appellants, both in this court and in the court below, and dismissing the appellees' petition.

DECREE REVERSED.