THOMAS W. LEVERING *vs.* VICTORIA L. LEVERING, and others. THOMAS W. LEVERING, Executor of SAMUEL S. LEVERING *vs.* VICTORIA L. LEVERING, Widow of SAMUEL S. LEVERING.

*Removal of Executor or Administrator—Orphans' Court— Claims against Decedent's estate—Appeal from the Orphans' Court.*

In this State, an executor or administrator can only be removed for legal and specific causes, and after citation, and an opportunity to be heard in opposition to the motion.

The act of an executor in having transferred to himself individually, on the books of a bank, shares of stock of such bank belonging to the estate of his decedent, and selling the same without authority from the Orphans' Court, is such a dereliction of duty as will justify the revocation of his letters of administration.

Levering *vs.* Levering.

The determination of the Orphans' Court is not final and conclusive as to claims against the estates of decedents. If the claim is disallowed, the claimant may seek his remedy in a Court of law or equity; and if it is allowed, the executor or administrator may refuse to pay it. The allowance of a claim by the Orphans' Court operates only as a protection to the executor or a̳ ̇inistrator, if he should pay it out of the estate of his decedent. ̇

The decision of the Court of Appeals on an appeal from an order of the Orphans' Court, is not final and conclusive with respect to the litigating parties. The original jurisdiction being ( y *prima facie,* " the exercise of the appellate jurisdiction does not increase its effect."

APPEALS from the Orphans' Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., YELLOTT, ROBINSON, IRVING, and BRYAN, J.

*John Prentiss Poe,* for the appellant.

The sale by the appellant of the whole number of shares of Mechanics' Bank stock, namely, three hundred and five, instead of a hundred and twenty-nine, as ordered by the Orphans' Court, was made through inadvertence, and not for any improper purpose ; and there being no proof of fraud or misconduct, he should not be held responsible, and removed from office, as if he had been guilty of a breach of trust. He intended to do his duty faithfully, and therefore the rule should not be to hold him liable upon slight grounds. *Gwynn vs. Dorsey, Adm'r,* 4 *G. & J.,* 453, 460.

He acted in good faith, and under such circumstances as will enable the Court to see, that if previous authority had been applied for, it would have been granted ; and, therefore, it was unjust to remove him on this ground. *Brown vs. Hazlehurst,* 54 *Md.,* 26, 30; *Tyson vs. Mickle,* 2 *Gill,*

376; *Gray vs. Lynch,* 8 *Gill,* 425–6. On the whole, the order removing Mr. Levering was unjust and erroneous.

There is no force in the objection that even if the claim be conceded to be proved, it should not be allowed, because of the long de 'y of the appellant in presenting it. Until the sale of Hockley Mill, in July, 1884, the appellant was not in a condition to present his entire claim, for the reason that until then the co-partnership affairs could not be settled—*Story on Part.,* sec. 221; *Rial vs. Wilhelm,* 3 *Gill,* 356–363; *Wadsworth vs. Manning,* 4 *Md.,* 71; and he was under no obligation to present a partial one.

Further, the delay has prejudiced nobody; the assets in his hands being insufficient to pay him, he had a right to retain them until his own claim was in a condition to be presented to the Court and passed. By statute, his claim stands on an equal footing with that of any other creditor. *Art. 93, secs.* 97, 104, *of the Code;* 3 *Black. Comm.,* 18, 19; *Stevenson vs. Schriver,* 9 *G. & J.,* 324; *State, use of Stevenson vs. Reigart,* 1 *Gill,* 31; *Bowling vs. Lamar,* 1 *Gill,* 358; *Semmes vs. Young,* 10 *Md.,* 247; *Yingling vs. Hesson,* 16 *Md.,* 117–120.

Upon the general question of laches, it is enough to say that each case, as a rule, stands on its own peculiar circumstances. The claim here is not stale or unjust. On the contrary, it has been continuously asserted from the beginning, and its rejection will lead to the grossly unjust result of compelling the executor or his sureties to pay to the distributees their full distributive share of the estate, while the debt due by the testator to the executor is absolutely ignored.

Again, looking to the fact that until the complete disposal of the Hockley Mill he could not present his claim, the alleged laches consist merely of a delay from July, 1884, to February, 1885—a delay manifestly too short to justify the Court in forfeiting, for the benefit of the appel-

lees, the just and thoroughly proved debt by the testator's estate to the appellant, as his surviving partner.

It was also suggested that the technical effect of the account of May, 1880, is to preclude the appellant from setting up his claim. This suggestion is untenable. The accounts of executors are *prima facie* merely, and may always be corrected. This is a familiar doctrine in Maryland. *Smith vs. Stockbridge*, 39 *Md.*, 640; *Raborg vs. Donaldson*, 28 *Md.*, 34; *Ruby vs. State*, 55 *Md.*, 490.

But here there is no mistake. The account is not a final one, nor is it at all inconsistent with the existence of an outstanding claim held by the executor. The balance is brought down, subject to the order of the Court; nor is there any room for the doctrine of equitable estoppel, inasmuch as it is not pretended that anybody acted upon the account, so that the allowance now of the claim would operate prejudicially.

*J. Wilson Leakin,* and *D'Arcy Paul,* for the appellees.

The appellant, though frequently cited by the Orphans' Court to render an administration account, filed no account until May, 1880, ten years after his appointment. The failure to render the accounts required by law, and the gross failure to settle the estate within the time named by the will, were good grounds for removal. *Jones vs. Jones,* 41 *Md.*, 359, 360; *Art.* 93, *sec.* 3, *of the Code.*

Having taken out letters, he became bound to perform the trusts conferred upon him by the will, and could not set up any adverse rights of his own, if such there were. *Schouler on Executors, sec.* 242; *Hanson vs. Worthington,* 12 *Md.,* 418 *and* 439.

It was his duty to have renounced if he intended to have set them up, but having once taken out letters it became his duty either to sell the mill within the three years after the death of the testator, when it was renting for $4,500, rather than wait until its rent was reduced to

$1,200, twelve years after his death, or to have taken it at its valuation named in the will, and at all events to have closed the estate within the three years.

Having failed to sell as directed by the will, he cannot avail himself of his own wrong as an excuse for his neglect in settling up the estate as directed by the law of the State, which he had sworn to obey, and the will of his son, which he was bound to carry out.

The failure to return an account of the sale, as well as the transfer to himself, individually, of the bank stock, for the purpose of borrowing money, was sufficient ground for removal.

The title to said stock being still in the estate of S. S. Levering, it became the duty of the Orphans' Court to remove the delinquent executor and to appoint a new representative to recover said property. Art. 93, sec. 275. Said provision is mandatory and admits of no discretion in the Orphans' Court. *Sifford vs. Morrison,* 63 *Md.,* 14.

Is the account of the appellant duly proven? Has the appellant abandoned or waived his claim, or by his gross laches and neglect in its presentation, precluded himself from a favorable hearing at the hands of the Court? On both of these vital points the proof offered is wholly silent, and it is therefore wholly and radically defective, and the failure to produce the evidence by the appellant ought to raise a strong presumption against him, for it is either *now* in his possession, or was in his possession at one time, and has been lost by his neglect or delay. 2 *Lindley on Partnership,* 993; *Bevan vs. Sullivan,* 4 *Gill,* 391.

The burden of proof is on the appellant to prove all the items of his account. Where a claim is old, merely formal proof will not be sufficient, but the evidence must be clear and convincing. *Hartwell vs. Colvin,* 16 *Beav.,* 145.

He who claims to be a creditor of an estate must take care to procure legal evidence of the contract which makes him such, for the law will not help him with any of its presumptions. *Stewart vs. Pattison,* 8 *Gill,* 55.

A complainant seeking to investigate ancient accounts, will have his case subjected to severe scrutiny. *Stiles vs. Brown,* 1 *Gill,* 350.

The fact being then that S. S. Levering contributed to the capital only his time and skill, and made no money contribution thereto, his share of the losses is restricted to the loss of his services, if there were no profits, and if the losses overcame the profits and impaired the capital, the loss would fall entirely on the father, as he was the only one having any money at stake, and the whole claim is entirely without foundation. *Cameron vs. Watson,* 10 *Rich. Eq.,* 101, 102; *Story on Part., sec.* 26, *note* 2; *Everly vs. Durborrow,* 8 *Phila.,* 93, *per Sharswood.*

The statement in the answer, that the father gave the son, who had been a clerk, an interest in the business, excludes any other notion than that S. S. Levering was only a partner in the profits to be made out of the use of his father's money; that the use of the money could be presumed to be in the nature of a loan, is negatived—first, by the relation of the parties, viz., father and son, the latter of whom was being started in life by his father; and second, we are told that the father " gave " the son an interest.

Where, by the terms of the agreement, the defendant furnished the capital stock and the plaintiff contributed his skill and service, and the profits of the copartnership were equally divided, the plaintiff is not entitled to any part of the capital stock in the settlement of the affairs of the partnership. He has no interest in any part of the capital excepting so far as, in the progress of the business, the same may have been converted into profits. *Conroy vs. Campbell,* 45 *N. Y. (Super. Ct.,)* 326; *Manley vs. Taylor,* 50 *N. Y. (Super. Ct.,)* 26; *Hasbrouck vs. Childs,* 3 *Bosw.,* 117.

That the testator had a right to direct a sale of the Hockley Mill within a reasonable time, is established law,

and also the executor had authority to compel the surviving partner to sell. *Featherstonhaugh vs. Fenwick*, 17 *Vesey*, 310 ; *Crawshay vs. Collins*, 15 *Vesey*, 226 ; *Walker, Adm'r vs. House*, 4 *Md. Ch.*, 49 ; 2 *Lindley on Part.*, sec. 1015 ; *Story on Part.*, sec. 322, *note, sections* 342, 350, 351.

When a sale cannot be made by agreement, the executors must enforce a general sale and winding up for their own safety. 2 *Lindley on Part.*, 1047. And a surviving partner will be debited with valuable but unsalable assets at their value. 2 *Lindley on Part.*, sec. 1018. And on the appointment of an executor to do anything in regard to the partnership, he must either comply with the directions of the will, or renounce. *Smith on Mer. Law*, 43.

Here the direction to sell, or take at the valuation mentioned in the will, was clear and imperative and left no discretion. When he took out letters testamentary, he became absolutely bound to comply with the terms of the trust reposed in him. His duty was clear at the end of three years to put it up and sell it at public auction, if necessary, and not wait until after he had retired from business and the rental reduced from $4,500 to $1,200. He must, therefore, be held to have taken the mill at the valuation mentioned.

A ledger is not a book of original entry, and therefore not evidence *per se* of any matters contained therein. *Bouvier's Law Dictionary ; Bentley vs. Ward*, 110 *Mass.*, 333 ; *Wall vs. Dovey*, 60 *Pa.*, 212 ; *Woodbury vs. Woodbury*, 50 *Vt.*, 152 ; *Thompson vs. Porter*, 4 *Strobb. Eq.*, 58, 64.

The evidence upon which it is sought to ground this stale claim is wholly insufficient, and therefore the Orphans' Court was right in rejecting it.

Not only was it the duty of the appellant, under the law, if it had been his intention to make a claim against the estate, to have filed it with all reasonable promptness, but it was his duty, under the will of his son, to close up

the estate in three years from his decease. And this defence of lapse of time is applicable to claims in the Orphans' Court. *Yingling vs. Hesson,* 16 *Md.,* 120.

Having failed for fourteen years to make any claim on a settled balance of account, he must be held to have waived or abandoned it, or by his inexcusable laches to have lost it. *Lansdale vs. Smith,* 106 *U. S.,* 392; *Tatem vs. Williams,* 3 *Hare,* 356, 359; *Beckford vs. Wade,* 17 *Vesey,* 96; *Munnickhuysen vs. Magraw,* 58 *Md.,* 561; *Chew vs. Farmers Bk.,* 9 *Gill,* 377–8; *Hall vs. Clagett,* 48 *Md.,* 240–244; *Stout vs. Seabrook,* 30 *N. J. Eq.,* 187, 190, 191; *Hunt vs. Stuart,* 53 *Md.,* 228–9; *Wright vs. Vanderplanck,* 2 *Kay & Johnson,* 18; *Wilhelm vs. Caylor,* 32 *Md.,* 151, 157–160; 2 *Lindley on Part.,* 902; *Godden vs. Kimmell,* 99 *U. S.,* 210–12.

When the first administration account was passed, the evidence shows that the appellant had a paper in his hands, showing the amount of the present claim, and yet, with that evidence before him, distributed $7000 to the distributees of the estate, and brought down a balance of $17,215.19, due to the estate by him, which account he swore was just and true as stated, which balance, if the present contention *made for him* be correct, never had any existence.

Having made that solemn admission of a balance due the estate, with all the evidence in his hands at the very time upon which the present claim is made, the appellant will not now be permitted to controvert it. *Byrd, et al. vs. The State,* 44 *Md.,* 504.

But it is said that the failure to sell the mill was the reason of the delay in not presenting the claim to the Court. Of this there is no evidence in the record. But suppose this was the reason; is it a sufficient one? It is submitted that it was not, for two reasons: 1. The failure to sell the mill was the neglect of the appellant to carry out the trusts reposed in him by the will of the testator;

he cannot, therefore, rely upon his own wrong as an excuse for his delay. And 2. The failure to realize on one asset of the partnership would not excuse the delay in the general accounting of the affairs of the partnership, or postpone such an accounting until the last asset was gotten in—the right to the account accruing immediately on the death of the testator. *Knox vs. Gye, L. R.,* 5 *H. L. Cas.,* 677, 678.

If the estate of the decedent was to be kept open, in the face of the direction of the testator to close it in three years, for fifteen years, until a particular asset of a partnership was realized on, it might equally be kept open for fifty years for another asset, and there would be no end.

It is said that no one has been injured by the delay; that the fund is still in Court, undistributed, and therefore the claim should be passed. "Nothing could be more dangerous than to proceed on such a principle. This Court must proceed upon fixed principles, and if it opened this transaction merely because there is abundance of assets to set the matter right, it must do so in other cases, where the property has been distributed and enjoyed for the lapse of half a century." *Per Sir John Romilly, M. Rolls, in Browne vs. Cross,* 14 *Beavan,* 114.

YELLOTT, J., delivered the opinion of the Court.

In this record are two appeals from an order of the Orphans' Court of Baltimore City, revoking the letters testamentary granted to the appellant on the estate of Samuel S. Levering, and rejecting the claim of said appellant, as surviving partner of the firm of Thomas W. Levering & Sons, against the estate of the said Samuel S. Levering, deceased. It appears from the proof in the cause, that in the year 1851, the appellant, Thomas W. Levering, entered into a copartnership with his two sons, Peter and Samuel S. Levering; the copartnership being known and designated as the firm of Thomas W. Levering & Sons.

The father had been conducting the business for a number of years anterior to the formation of this copartnership, and as the sons arrived at the age of maturity, associated them with himself as members of the firm; but whether they contributed any part of the capital, or merely gave their time and attention to the affairs of the firm, and became the recipients of a portion of the profits, is a fact not disclosed by any evidence presented by this record. The sons are now dead, and the father is the surviving partner. Subsequently to the death of his brother, Samuel S. Levering departed this life in April, 1870, leaving a last will and testament, by the terms of which his father became his sole executor. In his said will the testator directs that the affairs of the partnership should be closed up and his estate settled within a period of three years subsequent to his decease.

The petition, upon which plenary proceedings were instituted in the Orphans' Court, was filed by the widow of the testator, and alleges that the executor, having returned an inventory of the personal estate on the 17th day of May, 1870, postponed returning any account until the 21st of May, 1880, which was ten years after he had obtained letters testamentary and entered upon the performance of the duties appertaining to him in his representative capacity. This account exhibited a balance on hand due the estate exceeding seventeen thousand dollars; and it is further averred that "no other account of any nature or description" has been rendered by the executor at any time anterior to the institution of these proceedings.

The petition further alleges that on or about the 5th day of November, 1879, the said executor, having had a large number of shares of the stock of the Mechanics' Bank, in the City of Baltimore, belonging to the estate of his decedent, transferred to him on the books of the bank, "not as executor, but individually," sold said stock; said

Levering *vs.* Levering.

transfer and sale having been made without authority derived from any order of the Orphans' Court; "which sale does not appear on his account filed May 21st, 1880."

It is further alleged in the petition that the executor has never given his personal attention to the administration, but, that having taken into partnership his son, Thomas H. Levering, he has surrendered to him the entire control of all these transactions; and that now, fifteen years after the death of the testator, a partnership account is about to be presented, which is "illegal and erroneous," and will wholly absorb the balance of the estate, and leave nothing in the hands of the executor for distribution. The petitioner, therefore, invokes the interposition of the Orphans' Court, and asks for the removal of the executor, and the appointment of an administrator to represent herself and daughters, who are the only distributees under the will of the testator.

From the answer of the executor it fully appears that he passed his first administration account in May, 1880, which was ten years after letters testamentary had been granted. The sale of bank stock belonging to the estate is admitted by said executor, who urges, as an excuse, that the sale was made "through inadvertence, and that he meant no disrespect to the Court;" and he says that he is now ready to make a final settlement of the whole estate.

A large mass of testimony has been taken, and very little of it is relevant to the questions which can now be properly determined by this Court. A few prominent and material facts, which appear on the record without contradiction, must render a solution of many of the legal propositions presented in the able arguments of counsel wholly unnecessary. Here is an estate which, in conformity with statutory requirements, should have been speedily settled, and which, by the provisions of the will, was to be closed up within a period of three years. An interval of

fifteen years has elapsed since the assumption of control by the executor, and only one account has been returned, which was not presented until ten years after letters testamentary were granted. The petition for his removal having been exhibited, and filed on the 4th day of February, 1885, the executor proposed to settle the estate by the presentation of another account, and, on the 19th day of February, 1885, made affidavit to this account, which, when examined, is found to be composed of charges for losses alleged to have been sustained in partnership transactions, which aggregate a sum sufficient to absorb the entire estate, and leave it in a condition of insolvency. As the ultimate effect of the passage of an order, allowing this account, would be the total absorption and extinction of the estate of the decedent, in satisfaction of a claim presented by the executor, this obvious result is suggestive of the necessity for subjecting this claim to a close and rigid investigation by the Court, enlightened by all the evidence which can be possibly adduced in support of its validity.

The Court below, with these facts in view, passed an order removing the executor and disallowing his claim, and from this order these appeals have been taken. The propriety of this order is the question now presented for determination.

It has been held in some of the States that the power of removal is inherent in Courts of probate, and must necessarily exist in order to prevent a failure of justice. *Taylor vs. Biddle*, 71 *N. Car.*, 5; *Stoever vs. Ludwing*, 4 *Serg. & R.*, 201.

In Maryland, however, an executor or administrator can only be removed for legal and specific causes, and after citation and an opportunity to be heard in opposition to the motion. The Orphans' Court has no constructive powers. It has few of the attributes appertaining to Courts of general jurisdiction. Its jurisdiction is limited,

and created by statute, and its exercise of power can receive no support from presumptions. We must therefore look to the sources of its power, which are to be found in the numerous legislative enactments, designating its duties and conferring the jurisdiction necessary to the proper performance of its functions.

The first three sections of Article ninety-three of the Maryland Code relate to the rendition of accounts in the administration of the estates of decedents. An account must be returned within the period of twelve months from the time when letters are granted. If the first account does not show that the estate is fully administered, another account is required within six months, and so on within every term of six months, until the estate shall appear to be fully administered. If there has been a failure to render an account within the term thus limited, or within such further time as may have been allowed by the Orphans' Court, not exceeding six months, the letters, on the application of any person interested, *may* be revoked and administration granted at the discretion of the Court.

Section two hundred and seventy-five of the same Article of the Code, reads as follows:

" If any executor or administrator shall sell or remove any property without an order of the Orphans' Court, the Orphans' Court *may* revoke his letters as soon as they are satisfied of such sale or removal having taken place, and appoint an administrator, whose duty it shall be, immediately to proceed to get possession of the property so sold or removed," &c.

The rule, by which statutes of this nature are to be construed, has been established by numerous authorities, and seems to leave to the Courts very little room for the exercise of discretion. *The People vs. Brooks,* 1 *Denio,* 457 ; *Sifford vs. Morrison,* 63 *Md.,* 14.

But, although, the current of decisions may run so strongly and uniformly in one direction as to render the

rule, applicable to the construction of a statute, fixed, stationary, stereotyped and apparently inflexible, it must be borne in mind that every law is presumed to have been enacted with reference to certain immutable principles of justice, which lie at the foundation of every system of jurisprudence.   It has been well remarked that "the law, in its most positive and peremptory injunctions, is understood to disclaim, as it does in its general aphorisms, all intention of compelling to impossibilities, and the administration of laws must adopt that general exception in the consideration of all particular cases." *Broom's Leg. Max.*, 222.

If therefore an executor having perishable property in his possession, and being unable to' obtain an order from the Orphans' Court in time to prevent its loss, should, in that exigency, in good faith sell to prevent such loss, then the Court might properly apply the maxim *lex non cogit ad impossibilia*; and if subsequently to the sale the Court should pass an order approving his conduct, then the other legal aphorism, *omnis ratihabitio mandato aequiparatur* is equally applicable.

But the pressure of no emergency created a necessity for the transfer and sale of the bank stock by the appellant, and its sale, without an authorization from the Orphans' Court, was clearly such a dereliction of duty as justified the interposition of the Court, and' the passage of an order; of revocation.   The Court therefore simply performed a duty, when it, removed the executor, and there can be no reversal of this portion of its order.

Justice requires that an executor or administrator should always be permitted to urge in his defence any matters of exculpation which may exist.   We have said that no such matters are shown in this case, and we do not consider it necessary to determine in advance what defences might be sufficient for his protection in possible cases.

The questions presented by the appeal from that portion of the order of the Orphans' Court, which operates

as a disallowance and rejection of the claim produced by the executor against the estate of his decedent, must now be considered. This branch of the case was most ably and elaborately argued by counsel, who seemed solicitous that this Court should now finally determine the matters in controversy. But it must be manifest that it is beyond the power of the Court, on this appeal, to reach any such result. The Orphans' Court can pass upon claims against the estates of decedents, but its determination is not final nor conclusive. If the claim is disallowed, the claimant is not precluded from seeking his remedy in a Court of law or equity. If the claim is allowed, the executor or administrator may refuse to pay it. The decision of the Orphans' Court is only *prima facie,* and if the claim is allowed, only operates as a protection extended to the executor in the event of its liquidation by a disbursement of the funds held by him in his representative capacity. *Owens vs. Collinson,* 3 *G. & J.,* 37 ; *Lee vs. Lee & Welch*, 6 *G. & J.,* 321 ; *Stevenson vs. Shriver,* 9 *G. & J.,* 324 ; *Stockett vs. Jones,* 10 *G. & J.,* 276 ; *Hesson vs. Hesson,* 14 *Md.,* 8 ; *Art.* 93, *sec.* 101, *of the Code.*

And "claims of executors and administrators stand on the same footing with those presented by other creditors of deceased persons." *Semmes, Exc'r of Young vs. Young's Adm'rs,* 10 *Md.,* 246.

The Orphans' Court with its limited powers and circumscribed jurisdiction, cannot finally and conclusively determine any claim brought by a creditor against the estate of a decedent.

The adjudication and conclusive determination of matters in controversy between an executor or administrator and creditors, appertain "exclusively to the Courts of law and equity."

"The Orphans' Court cannot, under pretext of incidental powers or constructive authority, exercise any jurisdiction not expressly given it by law." *Scott vs. Burch,* 6 *H. & J.,* 79 ; *Bowie vs. Ghiselin,* 30 *Md.,* 557.

And, when an order of the Orphans' Court has been appealed from, the decision of the Court of Appeals is not final and conclusive with respect to the litigating parties. The original jurisdiction was only *prima facie*, "and the exercise of the appellate jurisdiction did not increase its effect." *State, use of Stevenson vs. Reigart*, 1 *Gill*, 1.

From what has been said it follows that, on this appeal, there can be no final adjustment of the matters in controversy. It becomes the duty of this Court to render just such a decision as the Orphans' Court should have rendered; and it can only have the same effect as it would have if rendered by the Orphans' Court, and no more. Such order is final and conclusive as respects the subsequent action of the Court below, but, as has already been shown, by the citation of authorities, is not conclusive as respects the rights of the parties to the cause. •

The principles applicable to the proof must now be ascertained. This is a claim brought by an executor against the estate of his decedent. Now it has been repeatedly decided that even when the claim of an executor against the estate has been allowed, if it should be contested before payment, its passage by the Orphans' Court is no evidence of its correctness. "It must be supported by testimony substantially sufficient for its establishment before a jury. The passage of the claim adds nothing to its intrinsic merits or authenticity when reviewed by the Orphans' Court." *Lee vs. Lee & Welsh*, 6 *G. & J.*, 316; *Bowling vs. Lamar*, 1 *Gill*, 363.

"And for want of full proof the Orphans' Court may reject any claim against a deceased's estate after it has been passed and before payment." *Edelen vs. Edelen*, 11 *Md.*, 419; *Kent vs. Waters*, 18 *Md.*, 72.

This being a rule rigidly observed, in relation to a claim already passed by the Orphans' Court, it would be strangely inconsistent to ignore its applicability when proceedings are pending with reference to claims which

are, as soon as presented, most strenuously and persistently contested.    The ends of justice cannot be attained unless the accounts of the claimant are closely scrutinized; and an adduction of proof, sufficient to carry conviction to the minds of intelligent jurors, should be required as a necessary preliminary to the determination of the controversy.

When we proceed to investigate the claims presented by the appellant, it is discovered that they grew out of the complicated transactions of a partnership existing and doing business for a number of years.    One of the items in the account is for losses incurred in the sale of real estate belonging to the partners.    There is nothing in this record to show what portion of this estate belonged to the decedent.    His estate is also charged with his proportion of the losses alleged to have been sustained by the firm in its numerous and multiform transactions.    Although the evidence contained in this record is voluminous there is no proof sufficient to show the precise nature and extent of the interest which the deceased had in the firm.    It cannot be ascertained from the evidence whether he contributed a portion of the capital or only his time and attention to the transaction of the business.    As the claims are for losses, the ascertainment of these facts might possibly become vitally important to any determination in regard to their validity.    In the absence of proof in relation to these important and material facts, the Orphans' Court could not do otherwise than reject the accounts of a claimant, against whom the doors of the Courts of law and equity are not closed ; and in which he may therefore pursue his remedy and obtain a final decision of the matters in controversy.

There being no error in any of the rulings of the Orphans' Court, its order must be affirmed, with costs to the appellees in each appeal.

*Order affirmed.*

(Decided 17th December, 1885.)

ALVEY, C. J., delivered the following opinion, in which Judge ROBINSON concurred :

The appeals in this record were taken from the order of the Orphans' Court of Baltimore City, dated the 23d of April, 1885, by which the appellant was removed from the position of executor of his son's estate, and his account or claim against that estate, for which he sought to be allowed, was rejected.

1. In regard to that part of the order of the Court below, revoking the letters testamentary held by the appellant, I can perceive no good or sufficient ground for questioning the correctness of the action of the Orphans' Court. That there had been great delay, and apparent neglect, in the administration of the estate, are facts abundantly shown by the proof; and for such delay and apparent neglect there is no sufficient excuse shown. The appellant's testator died in April, 1870, and letters to the executor were granted soon thereafter. And notwithstanding the great lapse of time, there has been but one account stated for the approval of the Orphans' Court, and that was stated in 1880, whereby a balance due the estate was shown to be in the hands of the appellant, as executor, of $17,215.19 ; and there has been no offer or attempt to state any other account until the recent proceedings against him. The estate still remains open, and apparently far from being fully administered. And not only this great delay and apparent neglect existed as cause for revocation of letters, but his unwarranted mode of dealing with and disposing of some of the assets of the estate, rendered it highly proper that he should be removed from the administration.

It is, however, unnecessary to say that the provision of the statute, under which the Orphans' Court is supposed to have acted in revoking the letters of the appellant, was imperative upon that Court, and that no discretion was allowed to be exercised by it, upon the facts in proof. It

is all-sufficient for the purposes of this case, that there is found in the law ample authority for the order that has been passed by the Court, and that the facts of the case show that this authority has been well and judiciously ex-. ercised by the Court. Farther than this it is unnecessary to decide, as this case is presented.

2. With respect to the action of the Orphans' Court in disallowing and wholly rejecting the account of the appellant against the estate, I do not see how the Court could have done otherwise upon the proof submitted to it. The claim is a large one, of a peculiar nature, and of very long standing; and it was brought forward and presented to the Court after such great delay, and under such questionable circumstances, as to call for the fullest attainable proof of its correctness, and especially as the claimant himself was the sole representative of the estate sought to be charged. The appellant makes the claim as surviving partner of a firm of which the deceased son was a member; and whether the claim be well founded or not, depends upon the correct adjustment of all the partnership affairs, and the partnership existed for a period of a good many years before the death of the son. Though the son had been dead near about fifteen years, the claim was never presented to the Orphans' Court for allowance until the institution of the proceedings by the appellee, in February, 1885, which resulted in the rejection of the account. The account is not only large, but quite an intricate one, involving a full investigation into the profit and loss account of the partnership; and it is quite obvious that the Orphans' Court is not a very appropriate tribunal to conduct such an investigation, and to pass upon the many questions that would likely arise in the course of the inquiry. I do not say, or intend to intimate, that the claim is without merit; it may be well founded in fact and in justice ; but the proof furnished in its support is not satisfactory. And since the executor,

27        

the claimant, is removed from his office, and there will be some person appointed to succeed him as the representative of the estate, it would be quite futile to "change or amend" the order of the Court and remand the cause, under sec. 42 of Art. 5 of the Code, to the end that further proof might be taken, as the Orphans' Court would be entirely without authority to adjudicate upon the claim and direct its payment, if proved to its satisfaction, against the will or protest of the administrator with the will annexed. *Miller vs. Dorsey*, 9 *Md.*, 317 ; *Bowie vs. Ghiselin*, 30 *Md.*, 556. The most that the Orphans' Court could do in respect to the claim, as the case is now circumstanced, would be to order that the "claim will pass when paid," leaving the question entirely with the administrator to determine whether payment should be made or not, before regular judgment obtained in the proper tribunal. Of course, the appellant will be at liberty to take proceedings in the proper tribunal for the establishment of his claim, notwithstanding the affirmance of the order appealed from by this Court. *Stevenson vs. Schriver*, 9 *G. & J.*, 324 ; *State, use of Stevenson vs. Reigart*, 1 *Gill*, 1.

I do not concur in a good deal that is said in the opinion of the majority of the Court, and hence I have stated briefly the grounds upon which I think the order of the Court below should be affirmed. And in this view of the case, I am authorized by Judge ROBINSON to say, he fully concurs.