**FIDELITY & DEPOSIT CO. OF MARY-
LAND v. McQUADE.**

No. 7766.

United States Court of Appeals for the
District of Columbia.

Argued Oct. 17, 1941.

Decided Nov. 3, 1941.

Lowry N. Coe, of Washington, D. C.
(Julian I. Richards, of Washington, D. C.,
on the brief), for appellant.

James M. Earnest, of Washington, D. C.
(W. Gwynn Gardiner, of Washington, D.
C., on the brief), for appellee.

Before GRONER, Chief Justice, and
MILLER and VINSON, Associate Justices.

GRONER, C. J.

This is a suit to establish a lien or interest
in appellant, in certain real estate located in
the District of Columbia.

The case is this: Sometime prior to 1925, appellee, a resident of Maryland, and his aunt, Mary Louisa McQuade, a resident of Washington city, jointly purchased at auction for $8,000 a parcel of improved Washington real estate, and borrowed from a building association $4,500 of the purchase price on a deed of trust. In February, 1925, Mrs. McQuade qualified as executrix of the estate of Francis Joseph McQuade (presumably her husband), and under the provisions of Section 3 of Title 3 of the District of Columbia Code executed a bond conditioned to pay all the debts of the decedent. She procured appellant, Fidelity and Deposit Company of Maryland, as surety on her bond and agreed to indemnify it against any loss which it might sustain thereby. In the following October, the holder of a judgment against Francis Joseph McQuade obtained a show cause rule against Mrs. McQuade as executrix, as a result of which the Probate Court entered a decree requiring her, individually and as executrix, and the bonding company, as surety, to pay the judgment. Appellant accordingly advanced $800 to satisfy the judgment and took a pro tanto assignment from the judgment creditor of his rights under the Probate Court decree. Appellant's efforts to collect the money from Mrs. McQuade were unavailing, and sometime in 1928 it informed appellee that its judgment against Mary Louisa McQuade constituted a lien on her interest in the property. An offer was made by appellant to settle the claim at a very considerable discount, but appellee declined to pay anything and referred the matter to his Baltimore attorney, Mr. Victor I. Cook. In July, 1928, the mortgage debt, which at that time had been reduced to approximately $3,800 through payments made by appellee, became due, and demand was made for payment. At this time a representative of appellant approached appellee's attorney and repeated the statement made to appellee that appellant had a judgment lien on Mrs. McQuade's interest in the property. Appellee's attorney, in the circumstances recognized that the judgment would have to be paid. Thereupon, appellee, with the knowledge and approval of appellant, acquired Mrs. McQuade's interest in the property. Both before and after this transfer Mrs. McQuade had the use of the property, and appellee paid all taxes and payments on the deed of trust. In addition he advanced money to Mrs. McQuade. She died in 1934. At the time of the acquisition by appellee of his aunt's interest, neither appellee nor his counsel had examined the title records, and both relied upon the statement of appellant that its judgment was a lien on the property. Appellee at that time believed that whenever the property was sold, appellant's judgment would have to be satisfied out of the proceeds. In consequence of this, there followed for ten years a sporadic correspondence between appellant and appellee's counsel in relation to the sale of the property, the sale being repeatedly delayed because of the poor market. Then in 1938 appellee was advised by a Washington attorney that the Probate Court judgment was not a lien against the property. Appellee advised appellant of this fact, and thereafter refused to admit any obligation to appellant. This suit followed.

The lower court concluded as a matter of law: that there was no agreement between appellant and appellee that the latter would individually assume or pay appellant's claim against Mary Louisa McQuade; that appellant's claim did not at any time constitute a lien on the property; that all of the parties acted in good faith; that there was a mutual misunderstanding as to the existence of the lien, but that appellant had not refrained from taking action which it might have taken to enforce its claim against Mary Louisa McQuade by virtue of any action or conduct of appellee; and that the conveyance from Mary Louisa McQuade to appellee was for a valuable consideration and not in fraud of any of appellant's rights. Thereupon, the court dismissed the bill.

In this court, appellant claims (1) that there was a lien and that appellee's acquisition of the property was had on the assurance to appellant that he would sell it and pay his aunt's debt to appellant; (2) that if there was no lien, there was a mutual mistake of law which appellee may not take advantage of to deny his contract to sell the property and pay appellant; and (3) that the transfer to appellee was without consideration, thus unjustly enriching him at the expense of appellant.

Appellee's position is that there was no lien against the property; that if there was, it had expired by limitations; and that he promised to pay appellant only if there was a lien.

We are of opinion that the dismissal of the bill by the court below was correct.

*First.* Appellant, to sustain its position that its probate judgment is a lien

on the land, relies upon Title 24, Section 323, of the District of Columbia Code, which provides that every final judgment at common law and every unconditional final decree in equity for the payment of money shall be a lien on all of the freehold and leasehold estate, legal and equitable, of the defendant. But we think this section has no applicability to judgments or decrees of the Probate Court. Admittedly, there is no express provision making judgments of the Probate Court a lien on lands, and judgment liens exist only by virtue of statutes. Repeatedly, we have said that that court has only the powers expressly conferred on it by law. Its predecessor was the Maryland Orphan's Court, and when adopted into the District law, it was settled by the Maryland decisions that the court was a court of limited jurisdiction. Levering v. Levering, 64 Md. 399, 2 A. 1; Townshend v. Brooke, 9 Gill, Md., 90; see Cook v. Speare, 13 App.D.C. 446. As a result, we have declared that the Probate Court could not require assets in the hands of a third person, which were claimed to be a part of the estate, to be paid into court. Richardson v. Daggett, 24 App.D.C. 440. We have also held that the court was without power to compel an executor to pay the claim of a creditor where the executor denied that the estate was liable. Miniggio v. Hutchins, 43 App.D.C. 117. We likewise held that an executor could only be removed by the Probate Court for causes specified in the statute. Hawley v. Hawley, 72 App.D.C. 357, 114 F.2d 505. And we have held that that court may not decide disputes over title or right to possession of property. Jones v. Dunlap, 1940, 73 App.D.C. 59, 115 F.2d 689; Holzbeierlein v. Grant, 1941, 73 App.D.C. 154, 117 F.2d 26. It is, therefore, clear that Section 323 should not be construed to include decrees of the Probate Court.

■ *Second.* Appellant's next point is that appellee, having agreed to sell the property and pay the debt, may not now, on the ground of a mistake of law, refuse to carry out his contract. The difficulty of this position is that it does not appear that appellee at any time unqualifiedly promised to pay the debt out of the proceeds from the sale of the property. As the trial court found, he merely recognized appellant's right to collect the debt out of the proceeds of the property, on the assumption that its judgment was a lien on the land. Without such an agreement, obviously the doctrine which appellant invokes is not in point. But even if there was such an understanding, we think the rule to apply would be that where the misapprehension of a party concerning his legal rights results from the misleading conduct of the other party, the latter should not be permitted to claim the benefits. 2 Pomeroy, Eq.Jur. (4th Ed.), § 847; Means v. Limpia Royalties, Tex.Civ.App., 115 S.W.2d 468; Blakemore v. Blakemore, 44 S.W. 96, 19 Ky.Law Rep. 1619; Merchants' & Farmers' Bank v. Cleland, 77 S.W. 176, 25 Ky.Law Rep. 1169; Order of United Com. Travelers v. McAdam, 8 Cir., 125 F. 358, 367-369. And see also, Snell v. Atlantic F. & M. Ins. Co., 98 U.S. 85, 25 L.Ed. 52, and Staten Island H. I. & Coal S. Co. v. United States, 2 Cir., 85 F.2d 68, 71. Indeed, it may not be going too far to say that in the circumstances we have here the mutual mistake under which the parties acted may very well be said to be a mistake of fact and not of law. Where there is a mutual mistake as to antecedent private rights, it has been held that the mistake partakes of the nature of a mistake of fact. Marshall v. Lane, 27 App.D.C. 276; Peter v. Peter, 343 Ill. 493, 175 N.E. 846, 75 A.L.R. 890; Barnett v. Kunkle, 8 Cir., 256 F. 644, certiorari denied 260 U.S. 738, 43 S.Ct. 97, 67 L.Ed. 489; Barnett v. Prairie Oil & Gas Co., 275 U.S. 563, 48 S.Ct. 121, 72 L.Ed. 428; 2 Pomeroy, Eq.Jur. (4th Ed.) § 849.

■ *Third.* Appellant's point that appellee acquired the property without consideration is not sustained by the evidence, which at least tends to show that all of the payments made on the property from the beginning in reduction of the building association dues and installments, and the taxes, were paid by appellee, and that his aunt had exclusive possession of the property from the original purchase to the date of her death, which occurred at least six years after the conveyance to appellee. And there was no evidence that Mrs. McQuade made the transfer to appellee in consideration for a promise to sell the property and pay appellant's claim. In the circumstances, a case of unjust enrichment is not made out.

Affirmed.